(114 App. Div. 480.)

PEOPLE v. BIRNBAUM.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

1. CRIMINAL LAW—NEW TRIAL—AFFIDAVITS OF JURORS.
   Affidavits of jurors ·cannot be received on motion for new trial to impeach their verdict.
   [Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, §§ 2392–2395.]

2. SAME—GROUNDS FOR NEW TRIAL—PREJUDICE OF PROSECUTING OFFICER.
   The fact that the district attorney and his assistants were prejudiced against defendant in a criminal prosecution was not ground for a new trial.

3. EMBEZZLEMENT—CONVERSION OF FUNDS BY ATTORNEY—PROCEEDS OF CAUSE OF ACTION.
   The fact that under an agreement with his client an attorney was to receive one-half the proceeds of a cause of action did not exonerate the attorney from his duties in respect to his client after collection of such proceeds, and, although the relationship of debtor and creditor existed, the attorney was liable for converting his client's share.
   [Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Embezzlement, § 19.]

4. SAME.
   Under Pen. Code, § 528, providing that "a person who, with intent to defraud or deprive the true owner of his property * * * or to appropriate the same to the use of the taker, * * * either * * * (2) having in his possession, custody or control, as a bailee, servant, attorney, agent," etc., "or as a person authorized by agreement * * * to hold or take such possession, custody, or control, any money,"· etc., "appropriates the same to his own use, * * * steals such property, and is guilty of larceny," an attorney who is entitled to one-half the proceeds of a cause of action under an agreement with his client, checks out of a bank, after falsely representing to the client that he has accounted for all he received, the balance of the money due the client, and uses it in the payment of his individual obligations, is guilty of larceny.

5. SAME—DEMAND BY CLIENT.
   Such attorney would have been guilty of larceny if after the demand by his client he refused to pay over such money, even though it remained in the bank where originally deposited.

6. CRIMINAL LAW—TRIAL—INSTRUCTIONS—REQUESTS.
   In a criminal trial defendant should embrace in one request all instructions deemed necessary to enable the jury to weigh and apply character evidence.

7. SAME—CHARACTER OF DEFENDANT.
   Where in a criminal trial the court fully instructed, both in answer to requests by defendant and in the charge, that evidence of good character might justify the jury in entertaining a reasonable doubt of the guilt of accused, the refusal to further instruct with respect to the weight that might be given evidence of previous good character was not prejudicial error.

Appeal from Court of General Sessions, New York County.

Jacob M. Birnbaum was convicted of grand larceny, and appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

James W. Osborne (Francis I. Osborne, on the brief), for appellant. Robert C. Taylor, for respondent.

LAUGHLIN, J. The defendant is an attorney and counselor at law, having been admitted to practice in the year 1900. The indictment, in two counts, charged the defendant with grand larceny in the first degree, in that he had in his possession, custody, and control, as agent, bailee, and attorney, the sum of $550 belonging to one Harriet Coleman, a client of his, and appropriated the same to his own use, with intent to deprive and defraud her thereof. The first count was withdrawn, and he was convicted of the lesser degree under the second count.

The defendant was employed by the complainant to prosecute a claim for damages for personal injuries sustained by her against the Metropolitan Street Railway Company. On the 2d day of April, 1901, the client and attorney made an agreement in writing with respect to his employment and compensation, which, so far as material, provided as follows:

"I, Harriet Coleman, * * * do hereby agree and give J. M. Birnbaum the exclusive right power to prosecute my said claim for damages, and the said Birnbaum hereby agrees to give me fifty per cent. of the net proceeds recovered, and I hereby agree with the said J. M. Birnbaum that he shall retain fifty per cent. of the net proceeds recovered, together with the costs and counsel fees of the action as allowed by the defendant and the court; said costs and counsel fees to be paid by the defendant only, and not by the injured party. No settlement of this case to be made in or out of court without the consent of both parties hereto."

The action was brought, and upon the first trial a verdict was rendered in favor of the plaintiff for $1,925. The judgment entered upon the verdict was reversed upon appeal, and a new trial ordered. Upon the second trial a verdict was rendered in favor of the plaintiff for $2,000, and judgment was entered thereon on the 5th day of June, 1903, for the amount of the verdict and $427.29 costs. The defendant obtained the usual stay, and prepared to take another appeal, but subsequently, and on the 23d day of September, 1903, the judgment was compromised for $2,000. Payment was made by a check drawn to the order of "Harriet Coleman or J. M. Birnbaum, Attorney," which was delivered to the defendant, who indorsed it, and deposited it in his individual bank account to his own credit. On the 28th day of September the defendant gave his client $450 in full of her claim.

The people gave evidence tending to show, and sufficient to warrant the jury in finding, that the defendant represented to his client that he had only received in settlement of the judgment the sum of $1,300; that he represented that there was a large amount of disbursements, one-half of which she should bear, and that he deducted from her share the sum of $200 on account of disbursements. Although the complain-

ant does not admit that she consented to the deduction of $200 from her share on account of disbursements, or as to her liability for disbursements to that extent, yet the prosecution proceeded upon the assumption that the deduction of $200 was proper, and the defendant has only been charged with misappropriating her remaining share. The indictment was found upon the theory that the complainant was entitled to one-half of the amount received from the railway company without any deduction; but the nature of the evidence with respect to the deduction of $200 from her share on account of disbursements was such that the jury doubtless took the view that she acquiesced in or had knowledge of that deduction, and hence the defendant was not convicted of larceny in the first degree.

The defendant testified in his own behalf. His evidence, which was to some extent corroborated, tended to show that his client was anxious to settle; that the company offered to settle for $2,000; that he informed his client, and she advised him to make the settlement; that the amount of the judgment, less the costs, was not the basis of the settlement between him and the company, and that the settlement was negotiated without reference either to the amount of the verdict or to the amount of the costs; that before consenting to the settlement with the company he had an understanding with his client that he should receive $1,350 in full for his share and the costs, and that she should receive $650, less her share of the disbursements, not included in the judgment, and that this was the basis upon which he subsequently settled with his client, it having been subsequently agreed that $200 should be deducted from the $650 on account of her share of such disbursements. There was evidence upon which the jury were warranted in finding that the settlement with the company was negotiated upon the basis that the company should pay the amount of the verdict, exclusive of the costs included in the judgment, and that the costs were waived. Most of the evidence given upon the trial was upon these issues with respect to the basis of the settlement with the railroad company and the basis of the settlement between the defendant and his client. The evidence fairly warranted the jury in finding that the defendant did not learn until after she made the settlement with the defendant that he had received $2,000 from the railroad company, and that she settled with her attorney relying upon his representations that he only received $1,300 from the company. The record does not disclose the state of the defendant's bank account at the time he deposited the $2,000 therein, or at the time he gave his client the $450 in full settlement of her share, but it appears that on the day of the date of the check from the railway company his bank account was good for more than $550.

In his motion for a new trial the defendant claims that the jury were influenced by facts not proved. This claim rests upon the affidavit of the attorney for the defendant to the effect that a juror informed him, after the rendition of the verdict, that the jury understood that there were 11 other similar transactions pending against the defendant. This is hearsay evidence, and, moreover, under the well-settled rule, the jurors cannot be heard to impeach their verdict.

Upon the trial one Nickel, a voucher clerk for the street railway com-

pany, testified that he negotiated for the company the settlement of the case with the defendant by telephone, and that the defendant agreed to waive the costs included in the judgment, and to settle for $2,000, the amount of the verdict. The defendant was sworn before Nickel testified, and did not again take the stand to deny that Nickel negotiated the settlement with him, or that he was not in the city at the time, and he admitted that he negotiated the settlement with the company in part, at least, by telephone, but, as already stated, claims that nothing was said with respect to waiving the costs. He claims to have discovered since the trial evidence that he was not in the city at the time Nickel claims to have negotiated the settlement with him. It is manifest that by the exercise of due diligence that evidence should have been discovered during the trial.

The defendant testified that his client at the time of the settlement executed a general release, which, it appears by other evidence, contained a recital that the settlement was made for $2,000. She denied executing a release, and it was shown that the company did not receive it, and that it was its practice, where a judgment had been recovered, to take a satisfaction of the judgment, and not to require a release. The defendant now shows that one Julian, formerly a claim agent of the company, but now out of its employ, informed him that the release executed by his client was in existence, and that she and her daughter had committed perjury. He does not state the facts constituting the perjury, or produce, or explain his inability to produce, the affidavit of Julian. The defendant also presents an affidavit of one Victor, who was a clerk in his office, to the effect that at the time the complainant's husband executed a release of his claim against the company for loss of her services, which was required by the company as a condition of the settlement, he took her acknowledgment to the execution of a general release, reciting that the settlement was for $2,000, and read it over to her. The defendant claims that this witness was under a subpœna and in court at the time of the trial to testify to these facts, but was not present when called. The attention of the court was not specifically called to the importance of having this testimony, and no attachment or adjournment was asked on account of the absence of the witness.

The defendant testified, among other things, that while absent from the city he learned through his sister that a warrant for his arrest had been issued on this charge; that he understood that the street railway company instigated it, and that he remained away about three and a half months, at the suggestion of his relatives and against his own judgment; that the company was hostile to him because he had a very large amount of litigation against it, and that its employés had threatened to make trouble for him. On his cross-examination the district attorney, with a view to refuting the defendant's claim as to the basis of the unfriendliness of the street railway company toward him, sought to show that the attention of the street railway company was drawn to him by an inquiry of Mrs. Ziegler, one of his clients, with respect to the amount paid on a settlement of her judgment. This he denied. The evidence that he had a client by that name was received over his objection and exception. The inquiry into the matter was abandoned, however, after a few questions, which elicited no material evidence.

The defendant now seeks to show that the company sought out Mrs. Ziegler, and made misrepresentations to her, which, if material at all, is merely cumulative of the defendant's denial of the theory of the people as suggested by the questions so put to him upon the stand.

The defendant also shows facts which he claims tend to indicate that the district attorney and his assistants are prejudiced against him, but that, if true, would be no ground for a new trial, and it does not appear that he has been prejudiced by the attitude of the prosecution.

The remaining facts presented upon the motion for a new trial tend to contradict the testimony given by the complainant, her son and daughter, who were witnesses for the people, and tend to show that the complainant suborned a witness. The material facts are denied by them, and other facts are presented tending to impeach this newly discovered evidence. Other irrelevant and immaterial facts are shown. The alleged newly discovered evidence is largely cumualtive, hearsay, and not convincing. It is entirely improbable that it would change the result if a new trial were ordered. , The motion for a new trial was therefore properly denied.

The appellant presents a serious point upon the merits. He contends that the defendant's client did not own any specific part of the moneys received from the railroad company, and that if she did it has not been shown that he has either converted or misappropriated it. It is claimed that the agreement between the attorney and client constituted an equitable assignment of one-half the proceeds of the cause of action, and that, therefore, the defendant and his client were co-owners of this fund; and he cites as authority for this proposition the case of Fairbanks v. Sargent, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475, which so holds. It does not follow, however, that merely because the attorney and client each had an equal undivided interest in the fund the duties and obligations of the defendant as attorney terminated. The relation of attorney and client continued. To the extent of the client's interest, the defendant held the money as attorney for her. The relationship of debtor and creditor doubtless existed, but, in addition to that, the relationship of attorney and client existed, and the attorney cannot escape his duty or avoid his liability upon the theory suggested.

Section 528 of the Penal Code provides, among other things, as follows:

"A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either * * * (2) having in his possession, custody or control, as a bailee, servant, attorney, agent, clerk, trustee or officer of any person, association, or corporation, or as a public officer, or as a person authorized by agreement or by competent authority, to hold or take such possession, custody, or control, any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof: steals such property, and is guilty of larceny."

It is quite clear, I think, that if it appeared that the defendant checked out the balance of this account, and used it in the payment of his individual obligations, he would be guilty of a violation of subdivision 2 of the section of the Penal Code herein quoted. The serious ques-

tion arises as to whether the people have sufficiently shown that the defendant has appropriated his client's share of this money to his own use.  His intent to defraud and deprive her of the use and benefit of the property is clearly established.  There could have been no other object in concealing from her the true amount he received in settlement of her case.  The client, as she had a right to do, relied implicitly upon the representations of her attorney as to the amount of the settlement.  Wheaton v. Newcombe, 48 N. Y. Super. Ct. 215.  It is clear that, if he held this money as her attorney, and refused to pay it over on demand, he would have been guilty of larceny, even though it remained in the bank where originally deposited.  On the facts here presented, a demand therefor by the client upon the attorney, and refusal upon his part to pay, would have completed the crime.  She was deprived of making a demand by his concealment of the fact that he still retained some of her money, and by assuring her that he had fully accounted.  The money was deposited to his individual credit.  It was, therefore, the same as if in his custody.  If at the time of the settlement he retained $550 or $350 of his client's money in his pocket, and accounted to her for the balance, representing that he had accounted for all that he had received, I think it quite clear that the retention in his possession after such representation, and with the intent clearly shown by such representations to appropriate the balance of the fund to his own use, would constitute an appropriation thereof, without any further act, and render him guilty of larceny.  There is no material difference between his having the money in his pocket at the time of the settlement, or leaving it somewhere else with the same intent, or leaving it deposited to his individual credit in the bank; checking out and accounting to his client for only part of her share.  No case cited appears to be directly in point on these facts.  The argument in the opinion in the case of People v. Civille, 44 Hun, 497, tends in the direction of the views herein expressed, and is authority for a broad construction of the statute, but in that case the money had been used by the agent in payment of his own obligations.

The many other questions urged upon the appeal and in the points have been considered, but we are of opinion that there was no error prejudicial to the rights of the defendant, although one of the questions presented requires consideration.  The defendant called seven witnesses, who testified to his previous good reputation and character.  Before the court charged the jury, counsel for the defendant passed up a number of requests in writing, which the court, before delivering the main charge, proceeded to read, and charged or declined.  The court charged the twenty-eighth request, which was as follows:

"I request your honor to charge the jury that the defendant in this case has introduced evidence of good character, and that, if the jury believe from the evidence introduced that the defendant is a man of good character, it may of itself be sufficient to raise a reasonable doubt as to his guilt or innocence."

The twenty-ninth request was as follows:

"I request your honor to charge the jury that in this case the defendant has introduced evidence of good character, and that no evidence to the contrary has been introduced by the people."

The court, after reading this request, said to the jury as follows:

"As a fact, that is so. The people did not introduce any evidence, unless this case itself is evidence; there was none introduced by the people."

The court also charged the thirtieth request as follows:

"I request your honor to charge the jury that evidence of good character is not only of value in doubtful cases but also when the testimony tends very strongly to establish the guilt of the accused, it will sometimes, of itself, create a reasonable doubt, when without it none would exist."

The court then read the thirty-first request to the jury, as follows:

"I ask your honor to charge the jury that the character of the accused may be such as to create a reasonable doubt in the minds of the jury, and lead them to believe, in view of the improbability of a person of such character being guilty, that the other evidence is false."

And then said:

"Except as I have already charged on that point, I decline to charge that request, and I will give you an exception."

In the main charge subsequently delivered the court again alluded to the character evidence, and instructed the jury as follows:

"Now, I come to another phase of the case, as to which I have already charged, but which I will embody in my charge again, with reference to reputation. Often in the law, as well as among lawyers, reputation and character are confounded. The best distinction that I ever heard is, a man's character is what he is in point of fact, and his reputation is what other people think he is. Tell me what a man is continually thinking about, and I will tell you a man's character. But I will charge it in both ways, both as to character and reputation, because he has introduced evidence as to both. I think that some of the witnesses spoke of his character and some as to his reputation, and so I will consider, for the purpose of my charge, that reputation and character mean the same thing. Every man brought to this bar is presumed to have a reasonable good character. He starts out with that presumption. But juries must never understand that reputation or character justifies the commission of a crime. The good and the bad must obey the law just the same. But evidence of good character and good reputation is legal evidence, and the Court of Appeals has said, and I so charge you, that evidence of good reputation and of good character will, of itself, sometimes create a reasonable doubt where otherwise there would be none. I have already charged you that, I think, but if I have not, I charge that now."

No further request was made on the subject of the character evidence. It is to be borne in mind that the request on this subject which the court declined to charge further than as already charged was made and declined before the delivery of the main charge, in which the court subsequently instructed the jury quite fully. Upwards of 60 requests in writing to charge were presented to the court. Counsel for the defendant should have embraced in one request all the instructions that were deemed necessary to enable the jury to weigh and apply the character evidence. By requesting the court to charge on this subject piecemeal, doubtless the court was misled into thinking that the charge requested was merely a reiteration of what had been already charged. The defendant was a lawyer, and if either he or his counsel thought that the jury would not understand from the charge as made that they might be justified by the evidence as to previous good character in disbelieving or treating as false the incriminating evidence against him,

the attention of the court should have been pointedly drawn to the omission by a further request at the close of the charge in chief.

Trial courts should always be careful to instruct the jury in criminal cases where evidence of previous good character of the defendant is presented, either literally or substantially, according to the rule laid down by the Court of Appeals in Remsen v. People, 43 N. Y. 8. That rule has been often reiterated by that court and by the Appellate Division. People v. Elliott, 163 N. Y. 11, 57 N. E. 1120; People v. Bonier, 179 N. Y. 315, 72 N. E. 226, 103 Am. St. Rep. 880; People v. Childs, 90 App. Div. 58, 85 N. Y. Supp. 627. In the case at bar, however, although the court did not specifically draw the attention of the jury to the point that evidence of good character may alone be sufficient to justify the jury in disbelieving the evidence of guilt presented by the people, yet the court did very fully instruct the jury, both in answer to requests presented by the defendant and in the charge, that the evidence of good character might justify them in entertaining a reasonable doubt of the guilt of the accused, and it is highly improbable that the jury would not understand therefrom that such evidence of good character might warrant them in disbelieving the incriminating evidence. The guilt of the defendant, as we interpret the law, was clearly and satisfactorily shown, and we think he was not prejudiced by the failure of the court to further instruct the jury with respect to the weight that might be given to the evidence of previous good character.

It follows that the judgment should be affirmed. All concur.