## PEOPLE v. FITZGERALD.

(Supreme Court, Appellate Division, First Department. January 15, 1909.)

1. EMBEZZLEMENT (§ 44*)—EVIDENCE—SUFFICIENCY.

Evidence *held* to justify a finding that accused, an attorney, collecting money for his client, appropriated it to his own use, justifying his conviction of larceny.

[Ed. Note.—For other cases, see Embezzlement, Dec. Dig. § 44.*]

2. EMBEZZLEMENT (§ 17*)—CONVERSION OF MONEY COLLECTED BY ATTORNEY—DEMAND—NECESSITY.

Where an attorney, who collected money for his client under an agreement authorizing him to retain a part thereof for his services, represented that the same had not been collected, and thereafter confessed to his using for his own purposes the amount which he ought to have paid to the client, the failure to prove a demand on him was not essential to a conviction of larceny.

[Ed. Note.—For other cases, see Embezzlement, Dec. Dig. § 17.*]

3. EMBEZZLEMENT (§ 48*)—INTENT—INSTRUCTIONS.

Where, on the trial of an attorney for the larceny of money collected for his client, the court charged that the jury must find, to convict, that the attorney had used the money for his own purposes, and stated, in response to a request to charge as to guilty intent, that the court had assumed in charging as to intent that the attorney had used the money for his own purposes, the refusal to give requested charges as to guilty intent was not erroneous, as the jury must have understood that, though the attorney appropriated the money to his own use, he was not guilty unless the guilty intent existed.

[Ed. Note.—For other cases, see Embezzlement, Dec. Dig. § 48.*]

McLaughlin, J., dissenting.

Appeal from Court of General Sessions, New York County.

Maurice Fitzgerald was convicted of grand larceny in the second degree, and he appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Clark L. Jordan, for appellant.
Robert C. Taylor, for the People.

HOUGHTON, J. The defendant was indicted and convicted of the crime of grand larceny in the second degree in appropriating to his own use with criminal intent the sum of $250, which he had collected as attorney for one Teresa Happel, his client.

In the early part of 1906, Mrs. Happel, through the defendant as her attorney, brought action against the city of New York to recover damages for the negligent killing of her child. Negotiations for the settlement of the claim were entered into between defendant and the corporation counsel of the city, which resulted in the entry of a judgment for $500 and the payment of that sum to the defendant as attorney on the 29th day of August, 1907. The defendant had an agreement with his client that he should be entitled to one-half the recovery for his services. Several months after the action had been settled, and after the defendant had received the money, as the complainant

---

testifies, she inquired of the defendant as to the progress of her
case and what had become of it, and defendant replied, in substance,
that it was not strange the case had not come on for trial in view of
the congestion of the calendars of the courts, and that he would take
it up with the city attorneys and see whether they would settle or go
to trial, and that he made several appointments to meet her and explain
the situation of affairs, which he failed to keep, and that finally, be-
coming suspicious, she caused inquiries to be made, and learned that
the case had already been settled and the money paid to the defendant.
Other witnesses in behalf of the people testified that, when the de-
fendant was confronted with the complainant's accusations, he admit-
ted that he needed the money at the time he received it and used it
for his own purposes, and that he did not tell the complainant that
the case had been settled and the money collected when she made in-
quiries because he was financially embarrassed and could not pay her.
On the other hand, the defendant testified, in which respect he was
corroborated by his wife, that he told the complainant, when she made
inquiries respecting the progress of the action, that it had been settled
for $500, and that $250 was coming to her, which he offered to pay,
and that she refused to take the $250, and demanded the whole $500,
and complained that he had settled for so small a sum, and desired he
should pay the money back to the city and continue the prosecution
of the action; and, further, that he had been at all times financially
responsible and willing to pay her the $250 to which she was entitled.

It was clearly for the jury to say whether they believed the story
of the defendant or that of the complainant and the other witnesses
produced in behalf of the people, to the effect that the defendant con-
cealed the fact of settlement of the cause of action and the receipt of
the money, and represented that it had not been settled, as well as the
claimed confession of the defendant that he had used the money for
his own purposes and was so financially embarrassed at the time in-
quiries were made by the complainant that he could not pay her share
to her.

The learned trial court instructed the jury that, if they believed the
defendant's testimony, they must render a verdict of not guilty; but,
on the contrary, if they believed the evidence of the witnesses pro-
duced by the people, and that the defendant had a guilty intent to ap-
propriate the money to his own use at the time he received it, and did
in fact so appropriate it, then they could and should find the defend-
ant guilty.

The defendant urges as his principal ground for reversal of the
judgment of conviction that the theory of the trial was wrong, in
that it was incumbent upon the people to show a demand on behalf of
Mrs. Happel for the $250 belonging to her, and that until such demand
no conversion or misappropriation could be committed because the mon-
ey was rightfully in the hands of the defendant as attorney for the
owner.  Such a demand was never made, and the trial court held that
under the facts proved it was not a necessity, because deception had
been practiced, and receipt of the money concealed, and the share
belonging to the complainant actually appropriated by the defendant,

and that the length of time which had elapsed from its receipt to the defendant's interview with his client, together with the fact of the actual appropriation by the defendant, permitted the jury to find, if it saw fit, a guilty intent on the part of the defendant.

We think the court's ruling in this regard was correct. The same question was considered by this court in People v. Birnbaum, 114 App. Div. 480, 100 N. Y. Supp. 160. In that case an attorney, who was entitled to one-half the recovery, settled the case of his client for $2,000 and falsely represented to her that it had been settled for only $1,300. In his opinion in that case, Mr. Justice Laughlin said:

"On the facts presented, a demand by the client upon the attorney and refusal upon his part to pay would have completed the crime. She was deprived of making a demand by his concealment of the fact that he still retained some of her money and by assuring her that he had fully accounted."

The court broadly charged the jury that the complainant was entitled to only $250 of the $500, and that the defendant came lawfully into possession of the complainant's share, and did not need to keep the identical money which he received to pay over to her, but could mingle it with his own, provided he had remaining $250 with which to pay her.

The question of necessity for demand was raised by counsel for the defendant in various forms and by many requests to charge. We do not deem it necessary to discuss them in detail, further than to say that, in view of the deception proved to have been practiced by the defendant upon his client respecting the receipt of the money, and his confession that he had used it for his own purposes and was unable to repay it, and the length of time which elapsed between its receipt by him and inquiry concerning it by the complainant, and continued concealment of the fact of collection, we do not deem failure to prove demant fatal to the conviction of the defendant.

At first blush, some of the defendant's requests to charge with respect to guilty intent might seem to have been improperly refused. In his main charge the court told the jury that they must find that the defendant had used the money for his own purposes. After various requests respecting intent had been made, and various responses made by the court, the defendant's counsel finally asked the court to charge that guilty intent, unless coupled with some overt act, could not constitute the crime of larceny. To this the court responded that he had all along assumed in charging as to intent that the defendant had used the money for his own purposes. In view of the charges made and this explanation of the court, the jury could not have understood that the court intended to instruct them that a guilty intent, unaccompanied by any overt act, would make the defendant guilty of the crime charged against him. What the jury did understand was that, notwithstanding the defendant may have appropriated the money to his own use, still it must have been with a guilty intent, in order to make him guilty of any crime.

It is unnecessary to discuss further phases of the case, but only to say that upon a careful examination of the record we are convinced that the defendant was proven guilty of the crime charged against

him and given a fair trial, and that there were no errors committed which call for a reversal.

The judgment of conviction should be affirmed.

PATTERSON, P. J., and LAUGHLIN and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). The court, in its main charge, instructed the jury that if they believed—

"that this defendant, when he collected that money, at any time from the time he collected it up to the time of his indictment, did not intend to deliver the proper share to the complaining witness, then he is guilty of larceny as alleged, and your verdict will be guilty."

At the conclusion of the charge, defendant's counsel requested the court to charge the jury that, no matter what the defendant's intent—

"may have been, he had a right to the possession of the money until the minds of the parties met as to the amount to which each was entitled."

Also:

"That unless there was a deception practiced upon the complaining witness, a conviction cannot be had, and the defendant would not be guilty of larceny until a demand was made for the sum due from him to his client."

And:

"That unless the jury find, as a matter of fact, that there was deception practiced, they cannot convict. The defendant would not be guilty, no matter what his intentions were, unless a demand were made upon him."

These requests were denied and exception taken in each instance, and in declining the last one quoted the court further emphasized what he had said in the main charge as to intent, saying:

"If the jury believe that between August, 1907, and January 18th, there was an intent on the part of the defendant to misappropriate that $250 to his own use, and not turn it over to his client, if they find that that intent existed, they may convict, and it was not necessary, to constitute that crime, that he should be guilty of any deceit to his client that he had or had not collected it."

Exception was duly taken to this instruction.

I am of the opinion that the court erred in giving the instructions which it did, and also in refusing to charge as requested. When the whole charge is considered, with the refusals to charge, it will be seen that the court, in effect, instructed the jury that in order to convict it was not necessary for them to find that a demand was made by the complaining witness for her share of the money, or that the defendant practiced any deception in withholding the money from her; but they could convict if they found, between August, 1907, and January, 18th, there was an intent on the part of the defendant to misappropriate the share of the complaining witness and not turn it over to her. In other words, the court charged the jury that, if the defendant had an evil intent in relation to the money in question, he might be convicted, although he did no overt act in connection with its misappropriation.

As to whether the defendant's neglect or refusal to pay to the complaining witness her share of the money were due to a dispute

between them as to the amount which she was entitled to receive—as he says it was—was a close question of fact, and defendant's claim is corroborated to some extent at least by the attitude of the complaining witness at the trial when she declined to accept $250, though assured it would have no effect whatever upon the trial.

There being such a close question of fact, I think the court erred in instructing the jury as it did as to intent and refusing to charge as requested by defendant's counsel, and for that reason the judgment of conviction should be reversed, and a new trial ordered.