PEOPLE ex rel. ZOTTI v. FLYNN, Warden of City Prison.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

CRIMINAL LAW (§ 238*)—PRELIMINARY EXAMINATION—EVIDENCE.

Laws 1907, p. 263, c. 185, requires all persons selling steamship tickets to or from foreign countries, who also receive money for transmission to foreign countries, to give bond, and makes one conducting such business contrary to the statute guilty of a misdemeanor. Pen. Code, § 528, subd. 2, makes one who, having in his custody as bailee, agent, etc., any money, appropriates it to his own use, guilty of larceny. Code Civ. Proc. § 549, as amended by Laws 1886, p. 960, c. 672, permits a defendant to be arrested in an action to recover money received or to recover property or damages for the conversion of property where the money was received by an agent or other person in a fiduciary capacity. Relator, while selling steamship tickets to a foreign country, received a sum with instructions to transmit it to a foreign bank, but the money was never delivered, and relator stated that it had not been forwarded as agreed. *Held*, that relator was properly committed to await the action of the grand jury upon the charge of larceny.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 238.*]

Appeal from Special Term, New York County.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Application for habeas corpus by the People, on the relation of Frank Zotti, against William Flynn, warden of the city prison of the city of New York. From an order dismissing the writ and remanding relator to custody, he appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Charles S. Whitman (Joseph G. Dean, of counsel), for appellant.

William Travers Jerome (Robert C. Taylor, of counsel, and Charles W. Appleton, on the brief), for respondent.

CLARKE, J. The relator, having been arraigned before a city magistrate on a charge of larceny, was held to await the action of the grand jury, and committed to the custody of the warden of the city prison. He sued out a writ of habeas corpus. On the return thereof, the writ was dismissed and relator remanded, and from the order so providing this appeal is taken. The question presented is whether it appeared that a crime had been committed, and there was sufficient cause to believe the defendant guilty thereof.

It appears that the relator on the 29th of April, 1907, filed a certificate in the office of the clerk of the county of New York, in which he certified that he was conducting and transacting the business of broker, banker, real estate, railroad, and steamship ticket and forwarding agency at 108 Greenwich street, in the city, county, and state of New York, under the name and style of Frank Zotti & Co., and that the true and full name of the person conducting such business was Frank Zotti. Chapter 185, p. 263, Laws 1907, which took effect upon its passage, April 22, 1907, provides that: ·

"All corporations, firms and persons now or hereafter engaged in the selling of steamship or railroad tickets for transportation to or from foreign countries, who, in connection with said business, carries on the business of receiving deposits of money for the purpose of transmitting the same or the equivalent thereof to foreign countries, shall before entering into said business or before continuing said business * * * execute and deliver a bond to the people of the state of New York in the sum of $15,000, conditioned for the faithful holding and transmission of any money or the equivalent thereof which shall be delivered to it or them for transmission to a foreign country."

And it was further provided that:

"Any corporation, firm or person entering into or continuing in the business aforesaid, contrary to the provisions of this act, shall be guilty of a misdemeanor."

In holding this act valid and constitutional, this court said in Musco v. United Surety Company, 132 App. Div. 300, 117 N. Y. Supp. 21, affirmed 90 N. E. 171:

"It merely regulates the carrying on of that business by guarding in the form of a bond against imposition, fraud, and embezzlement. * * * The Legislature could well take notice of the frequent embezzlements and misappropriations by transatlantic ticket agents of funds intrusted to them for transmission by their fellow countrymen, and that ignorant immigrants were more likely to intrust money for transmission to their home countries to the men who had had charge of the transporting of themselves or their friends than through regular banking institutions. For the purpose of preventing imposition and fraud and crime, and promotion of the public welfare, the Leg-

islature had the right to enact a law regulating the carrying on of such business and imposing as a condition the giving of a bond in any reasonable amount."

On April 9, 1908, one Mare Luzina delivered to a clerk in the employ of Zotti $205, with instructions that the same was to be forwarded to the Imperial & Royal Post Savings Bank at Vienna, Austria, and she received a paper in two parts, joined together by a perforated line, reading:

"This receipt is to be kept by the purchaser. No. 18,550, New York, April 9, 1908. Received from Mr. Mare Wife of Antin Luzina One thousand Kronens, to be sent to Mr. Imperial and Royal Post Savings Bank's office in Vienna through the mail. Kronens 1000. Frank Zotti & Company. This notice goes to the addressee No. 18550. New York, April 9, 1908. Imperial and Royal Post Savings Bank's office. Through the mail in Vienna you will receive One thousand Kronens. Sent to you through Mr. Mare, wife of Antin Luzina. Kronens 1000. Frank Zotti & Company."

A memorandum was made on the stub in the book from which said paper was taken:

"No. 18550, date April 9, 1908, the recipient of the money, Imperial and Royal Post Savings Bank at Vienna, money sent by Mare, wife of Antin Luzina, address, 34 Desbrosses Street, $203.50, Kr. 1000."

Zotti was present at the time of the receipt of the money and the delivery of the said papers to Mare Luzina. The clerk stated to her that the said money would be delivered to the Imperial & Royal Post Savings Bank at Vienna promptly, and that within a month she would have a receipt in her hands from the bank in Vienna acknowledging the receipt of said $205. The said clerk delivered the said $205 to the cashier of Zotti, and the said sum was deposited by the cashier to the credit of Zotti in a bank in New York. An employé of the said Zotti prepared a list of names of persons from whom various sums of money were received by Zotti on the 10th day of April, 1908, to be forwarded abroad. That list contained the names and addresses of a number of different persons, the amounts of money received from each, and the destination to which said money was to be forwarded. Included among others is this item. The said list was sent by mail by direction of Zotti to the Union Bank at Prague, Austria. On the 2d of July, 1908, the general manager for Zotti received from him instructions, pursuant to which he sent a cablegram to the Union Bank at Prague to return the unpaid lists, of which one contained the item under consideration. On the 15th day of July, 1908, Zotti stated to an inspector in the employ of the United States Post Office Department that the money called for by the said lists, which included the said item, had not been forwarded to the bank in Austria to pay the various persons named thereon the various sum designated therein. The said lists were duly received in the mail from Austria on the 15th day of July, 1908, in an envelope addressed to Frank Zotti & Co. About a month or 40 days after the 9th day of April, Antin, the husband of Mare Luzina, called at Zotti's office, and asked him why the money had not been forwarded abroad, and Zotti told Luzina that he should wait about 15 or 20 days, and that he would have the receipt for the money. At the expiration of about 10 or 15 days from the time of

that call by Luzina and the conversation alluded to, Luzina again called at relator's office, and found the place closed. On the 14th day of July an involuntary petition in bankruptcy was filed in the United States District Court for the Southern District of New York against said Zotti, and on the said day the court appointed a receiver in bankruptcy, who took possession of Zotti's place of business on July 15, 1908.

Some of the exhibits in the case were in the possession of the receiver appointed in the bankruptcy proceeding, and were produced before the city magistrate by said receiver under subpœna. They were received in evidence on the examination over the defendant's objection that their reception by the magistrate was in violation of his constitutional rights. It thus appears that the relator, a person engaged in the selling of steamship tickets for transportation to or from foreign countries, who in conjunction with such business carries on the business of receiving deposits of money for the purpose of transmitting the same or its equivalent to foreign countries, received a sum of money with instructions that the same was to be forwarded to the Imperial & Royal Post Savings Bank at Vienna, Austria, and stated that the said money would be delivered promptly, that the money never was delivered, and that an order therefor was expressly recalled, and that the relator stated that the money had not been forwarded to the bank in Austria to pay the persons designated.

The people claim that the facts set forth constitute the crime of larceny under section 528, subd. 2, Pen. Code, which provides that:

"A person, who with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person * * * having in his possession, custody or control, as a bailee, servant, attorney, agent, clerk, trustee or officer of any person, association, or corporation, or as a public officer, or as a person authorized by agreement, or by competent authority, to hold or take such possession, custody or control, any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof; steals such property, and is guilty of larceny."

And the specific claim is that Zotti received the said sum of money as the agent of Mrs. Luzina under the special instruction and agreement to forward it to a specified place, and that having failed so to do, and having deposited it to his own account, he converted it to his own use, and committed larceny. The relator claims that the facts disclosed the relation of debtor and creditor merely.

It will be noted that in the Musco Case, supra, this court, speaking of the act prohibiting ticket agents from carrying on the business of receiving deposits of money for the purpose of transmitting the same to foreign countries without the giving of the bond there required, said:

"The Legislature could well take notice of the frequent embezzlements and misappropriations by transatlantic ticket agents of funds intrusted to them for transmission by their fellow countrymen."

Of course, the relation of debtor and creditor existed, but that does not at all affect the question of whether under the facts set forth Zotti received the money as a fiduciary.

In People v. City Bank of Rochester, 96 N. Y. 32, the bank received certain checks in payment of notes which it had discounted and credited the makers with having paid the notes; but the bank had previously sold the notes, and failed before they became due. It was urged that the checks received became general assets of the bank, but the court held:

"That they were delivered with explicit directions to apply the proceeds on the payment of the notes. Those directions were assented to by the bank officer, and the checks collected from the general fund. From that moment the bank was bound to hold the money for and apply it to that purpose and no other, or, failing to do so, return it to the petitioner. As to it, the bank was bailee or trustee, but never owner. * * * The specific object for which the fund was created was the payment of the notes. * * * The checks were impressed with a trust, and no change of them into any other shape could divest it so as to give the bank or its receiver any different or more valid claim in respect to them than the bank had before the conversion."

In Libby v. Hopkins, 104 U. S. 303, 26 L. Ed. 769, it was said:

"When A. sends money to B. with directions to apply it to a debt due from him to B., it cannot be construed as a deposit, even though B. may be a banker. The reason is plain—the consent of A. that it shall be considered as a deposit and not a payment is necessary, and is wanting."

In Cutler v. American Exchange National Bank, 113 N. Y. 593, 21 N. E. 710, 4 L. R. A. 328, plaintiff paid the bank $500 to be remitted to a bank in Leadville for the use of one H. Plaintiff received a letter of advice which he forwarded to H., but before its receipt the Leadville bank had failed, and its receiver refused to pay the money. Plaintiff then demanded that the defendant either carry out its agreement or refund the money. Gray, J., said:

"The plaintiffs wished to make a payment to a certain person in a distant state, and the defendant undertook to effect it for them in its own way. When the plaintiffs assented and paid in the sum desired to be remitted, they received the paper writing in question. From that moment the defendant became the depositary of a fund, which was by its own agreement devoted to one particular purpose and to no other. * * * The deposit was a special one, for a designated beneficiary, and could not be used or dedicated by the defendant to any other purpose. No system of bookkeeping entries would be allowed to cause the plain agreement of the parties to miscarry, either with respect to a payment to Hall, or to its return to the depositors, in the event of the failure of the defendant to cause such payment."

In Johnson v. Whitman, 10 Abb. Prac. (N. S.) 111, a remittance of bank notes was attempted to be made through a banker. He treated it as a general deposit, and converted it to his own use. Held, that he was properly arrested for conversion, and could not be heard to assert any debtor and creditor relation. See, also, Straus v. T. N. Bank, 122 N. Y. 379, 25 N. E. 372.

Irrespective of the broad principle laid down by these cases, taking special deposits received under explicit instructions out of general assets, we have the specific legislative enactment in chapter 185, p. 263, Laws 1907, requiring the giving of the bond by persons conducting such business as relator was engaged "conditioned for the faithful holding and transmission of any money, or the equivalent thereof, which shall be delivered to it or them for transmission to a foreign country." In the face of that legislation, it is impossible to regard

the relations existing between the relator and Mrs. Luzina as merely that of debtor and creditor.

The crime charged is that defined in the Penal Code, and as said by Finch, J., in People v. Sherman, 133 N. Y. 349, 31 N. E. 107, where the manager and director of elevator companies engaged in receiving and storing grain for others was indicted as agent and bailee, "it is of little utility to carry our inquiry back of the terms of the Penal Code when the offense charged and proved is clearly within it." The Penal Code was adopted in 1881, and in 1886 by chapter 672 of that year, section 549 of the Code of Civil Procedure providing "when the right to arrest depends upon the nature of the action" was amended by adding that such right existed where the action was brought "to recover for money received, or to recover property or damages for the conversion or misapplication of property where it is alleged in the complaint that the money was received or the property was embezzled or fraudulently misapplied by a public officer or by an attorney, solicitor or counsellor or by an officer or agent of a corporation or banking association in the course of his employment or by a factor, agent, broker or other person in a fiduciary capacity." These Code provisions, one making embezzlement by an agent a crime and the other a tort, and giving the civil remedies of arrest and execution against the person, passed within a few years of each other, indicate the clear intention of the Legislature to put an end to such breaches of trust, if possible, and the courts have steadily enforced them.

In Britton v. Ferrin, 171 N. Y. 235, 63 N. E. 954, an action for conversion brought against a commission merchant, the court said:

"The defendants were commission agents or factors of the plaintiff for the sale of his goods. * * * Where one intrusts his property to another for a particular purpose, it is received in a fiduciary capacity, and, when turned into money, that is also received in the same capacity. It does not belong to the agent, and he can lawfully exercise no power or authority over it except for the benefit of his principal, and only as authorized by him. If the agent uses it for his own purposes or fails to pay it over upon a seasonable demand, it is a conversion of that which does not belong to him. * * * The cause of action alleged in the complaint and established on the trial is within the principle of these cases, and under the provisions of section 549 of the Code of Civil Procedure the action is one where the defendants could be arrested and where an execution against the person might be issued under section 1487. Whatever may have been the rule as to the liability of factors upon their refusal to surrender to their principal the avails of property consigned to them for sale anterior to the amendment of section 549 in 1886 (Laws 1886, supra), we think that amendment plainly evinces an intent by the Legislature to place an action to recover money received by a factor, agent, broker, or other person in a fiduciary capacity within the category of torts, and to secure to a principal the same rights and remedies that exist as to other wrongs of a similar character. * * * Thus it seems clear that the Legislature regarded an action brought to recover money received by an agent or factor in a fiduciary capacity, which he refuses to deliver to his principal to whom it belongs, as one of tort and to secure to a plaintiff the same remedies as in actions for fraud, conversion, or other similar misconduct."

People v. Civille, 44 Hun, 497, was the case of a rent collector who had embezzled collections. People v. Birnbaum, 114 App. Div. 480, 100 N. Y. Supp. 19, was the case of an attorney who had received a sum of money on the settlement of a case, and had falsely represented

to his client the amount received and had retained for his own use more than he was entitled to. People v. Fitzgerald, 130 App. Div. 124, 114 N. Y. Supp. 476, affirmed 195 N. Y. 153, 88 N. E. 27, was a similar case. People v. Barry, 132 App. Div. 231, 116 N. Y. Supp. 870, affirmed 89 N. E. 1107, was the case of an agent who had received notes for discount and had converted them. In each instance the defendant was indicted and convicted under section 528, subd. 2, Pen. Code, and the judgment sustained. In each case it was strenuously argued that the relation existing between the complainant and the defendant was merely that of debtor and creditor, but the decision of the court was placed upon the law as expressed in the Code and refused to apply cases decided prior thereto. We have no doubt that a sufficient case was made out to justify the action of the magistrate in committing the defendant to await the action of the grand jury.

The relator raises the question of the admissibility of entries from his books produced by the receiver in bankruptcy under subpœna upon the ground that such receipt was in violation of his constitutional right, and required him in a criminal proceeding to give evidence against himself. It is doubtful whether such question is properly raised on habeas corpus. We do not think it necessary to consider the question further than to say that in our opinion the point seems to have been decided adversely to the contention of the relator in People v. Adams, 176 N. Y. 351, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St. Rep. 675, unanimously affirmed by the United States Supreme Court, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, and specifically as to the books of a bankrupt by the Circuit Court of Appeals in the First circuit in Kerrch v. United States (C. C. A.) 171 Fed. 366.

The order appealed from should be affirmed. All concur.