The People of the State of New York, Respondent, *v.* John B. Erit, Appellant.

First Department, December 9, 1932.

*Morgan J. O'Brien, 2d,* for the appellant.

*Irving J. Tell, Deputy Assistant District Attorney,* of counsel [*Thomas C. T. Crain, District Attorney*], for the respondent.

O'Malley, J. The judgment appealed from convicts the defendant of the crime of grand larceny in the first degree. It adjudges that he feloniously appropriated to his own use the sum of $1,000, the property of the complainant, Filomena Sarubbi, intrusted to him by her for investment. The appeal is predicated upon two grounds: a fatal variance between the indictment and the proof which tended to show that the property alleged in the indictment

to have been that of the complaining witness, belonged to persons other than the complainant; and failure of proof on the part of the People of any misappropriation by the defendant of the moneys turned over to him for investment.

As we are of opinion that the second ground for reversal urged is well taken, we find it unnecessary to pass upon the first.

The complaining witness is a school teacher. She became acquainted with the defendant through meeting him at the Greenwich Village Historical Society. Subsequent to their first meeting, the defendant delivered a lecture before this society on the subject of Women in Wall Street. Up to this time the complainant was under the impression that the defendant was engaged in literary work rather than business, and so informed him after his lecture. At the same time she told him that she was sorry that she was not aware of his business connections and told him that if she had known it " he might have avoided some losses " for her. Prior to that time the complainant admitted she had sustained losses in Wall Street.

She admitted that she first broached the subject to the defendant of making investments for her and that he told her he would help her make up her losses and aid her in making money besides.

Concededly the defendant was employed in a brokerage house. It is also conceded that following this conversation the complainant purchased outright stock on two occasions through the defendant and invested through him a sum in excess of $1,500. For such purchases she received the delivery of stock certificates to which she was entitled.

On March 16, 1929, she turned over to the defendant the sum of $1,400, for which she received the following receipt signed by the defendant: " Received from Miss Filomena Sarubbi the sum of $1,400 on $\frac{a}{c}$ Metallurgical Syndicate. Definite certificates to follow."

Prior to the payment of this money she had been told by the defendant that there was a syndicate known as the Metallurgical Syndicate in which he and others were interested and that he would give to the complainant the advantage of getting in " on the ground floor " and of purchasing the certificates for $5 a share; that the stock was about to be placed on the Stock Exchange and when this was done the stock would sell for from $25 to $30 a share. The complainant later turned over to the defendant additional cash of $350 for investment in the syndicate.

The complainant admitted that the defendant told her that there would be some delay in issuing the certificates and that they would not be delivered before May or June of 1929. The reason

for such delay, as explained by the defendant, was because of pending litigation over patents owned by the syndicate. Subsequently when the complainant did not receive delivery of her certificates as promised she, on several occasions, inquired of the defendant as to the cause. His answer at first was that the patent litigation had not been finally settled. Later he informed her that the American Syndicate had fallen through and that it had been taken over by a London group, but that eventually she would receive her shares. Later when the complainant persisted in receiving her shares or the return of the money, the defendant voluntarily turned back to her the sum of $750 from his own pocket. Upon receipt of this, the cómplainant informed defendant that the person for whom she had invested the balance of $1,000 was content to leave the money with the defendant until the certificates were delivered.

The complainant admitted that she had no knowledge whatever as to the existence or non-existence of the syndicate either in New York or London except what had been told her by the defendant; that she was unable to say whether the defendant had invested the money, nor was she able to say the defendant had not invested her money and turned it over to the syndicate.

In this state of the proof we are clearly of the opinion that the People failed to establish the guilt of the defendant. As this record stands there is no proof tending to show that the defendant did not in fact invest the complainant's money as he promised to do. The People offered no proof tending to show that the concern known as the Metallurgical Syndicate did not in fact exist, or that any of the representations made to the complainant by the defendant were in fact untrue. Simply because there was a failure to deliver certificates as promised and failure to repay to the complainant the balance of the money turned over for investment is not sufficient to warrant defendant's conviction.

It is to be observed that the complainant in the first instance sought out the defendant for the purpose of interesting him in making investments for her. He was the pursued, not the pursuer. Concededly there was no breach of trust with respect to the first money the complainant intrusted to him, for the reason that she received due delivery of the shares of stock then purchased. Her claim that the defendant represented to her that the certificates in this syndicate were actually ready for delivery is negatived by the receipt delivered to her when he received from the complainant the first $1,400. This states that " definite certificates " were to follow and carries with it an implication that certificates had not in fact been issued.

In the view of the minority the People's evidence established a *prima facie* case and comment upon the defendant's failure to take the stand is made. No such duty rested upon him. He was within his constitutional rights in refusing to testify, or in fact, to offer any evidence, if in his view the People failed to prove his guilt beyond a reasonable doubt. In *People* v. *Trimarchi* (231 N. Y. 263) Judge McLaughlin said: " The rule is that all the evidence, when considered by the jury, must, beyond a reasonable doubt, exclude or remove every other reasonable hypothesis than that of the defendant's guilt. * * * The evidence of facts and circumstances, in order to justify a conviction, must all be consistent with and point not only to the guilt of defendant, but they must be inconsistent with his innocence."

It follows that the judgment of conviction must be reversed and the indictment dismissed.

McAvoy, Martin and Townley, JJ., concur; Finch, P. J., dissents and votes for affirmance.

Finch, P. J. (dissenting). When it was proven that the defendant had failed to return upon demand the money which he had received for investment from the complaining witness, under the facts in the case at bar, there was established a *prima facie* case of the crime charged. As was said by Laughlin, J., in *People* v. *Birnbaum* (114 App. Div. 480, 487), in sustaining a conviction under section 528 of the Penal Code, from which was derived the present section 1290 of the Penal Law: " It is clear that if he held this money as her attorney and refused to pay it over on demand he would have been guilty of larceny even though it remained in the bank where originally deposited. On the facts here presented a demand therefor by the client upon the attorney and refusal upon his part to pay would have completed the crime."

The People were not called upon to prove a negative, namely, that the excuse given by the defendant to the complainant for his failure to return the money was false. The defendant in response to demands of the complainant for the money made an attempt to excuse the failure to return it by asserting that he had not received the money from the Metallurgical Syndicate in which he was supposed to have invested it. The People were, of course, ignorant as to what the defendant did with the money which was given him to invest. Whether this syndicate existed and whether or not the defendant had invested in its securities, were matters peculiarly within the knowledge of the defendant and the duty was on him to go forward with his proof, if any, to rebut the *prima facie* case made by the People. The defendant, however, did not even take the

stand and testify under oath that the aforesaid reasons existed for his refusal to return the money. The complainant testified to the said excuses having been furnished by the defendant. Although a finding of guilt may not be predicated upon such failure to take the stand under the particular facts and circumstances present in the case at bar, both the court and jury were justified in taking such facts and circumstances most strongly against the defendant.

As was said in *People* v. *Smith* (114 App. Div. 513): " Although the jury were not warranted, and the court is not warranted, in drawing any inference of guilt from his failure to take the stand, both jury and court are warranted in taking the facts and circumstances which, if he were innocent, he might have controverted or explained, most strongly against him."

Upon such a record the verdict of the jury was not against the weight of the evidence, but rather in accordance therewith.

The defendant also urges, in brief, that there was a variance between the indictment and the proof, because the indictment charged that the defendant had in his possession, custody and control the sum of $1,000, personal property of the complainant, which defendant appropriated to his own use. The proof showed that the complainant had received some of this money from other people for the purpose of investment. The complainant, therefore, had possession of the money with full authority to invest the same, if indeed she did not have complete title. So far as the defendant is concerned, therefore, the alleged variance is of no consequence and should be disregarded in reaching a just result.

The conviction was fully warranted upon this record and should be affirmed.

Judgment reversed and the indictment dismissed.