PETER REGAN and Another, Plaintiffs, *v.* BANK OF ATHENS TRUST COMPANY, Defendant.

City Court of New York, Special Term, New York County, January 16, 1936.

*Leon Wagman,* for the plaintiffs.

*Miville & Elbert* [*Charles E. Elbert* of counsel], for the defendant.

MADIGAN, J. What did defendant bank contract to do when, under the circumstances of this case, it received, at New York

city, $1,000 from one of the plaintiffs, who is referred to as the "sender" and who gave defendant a fee of $7.50, as wel as $2.50 to cover "cable expenses," for the purpose of having the $1,000 paid to a brother of the sender at Marseilles, France?

The question arises on defendant's motion for summary judgment.

On the occasion when defendant received the $1,000 as well as its fee and two dollars and fifty cents "cable expenses," an officer of defendant presented the sender with a form which had been filled in on a typewriting machine. It was thereupon signed by the sender. It is referred to as defendant's Exhibit A, and reads, in part:

"APPLICATION FOR CABLE TRANSFER.

"To the Bank of Athens Trust Company, New York, New York, 4/9/35 Payable to Soter Regas residing at Hotel Geneve Marseilles, France, for the amount of $1,000 through the Banque de L'Union Parisienne subject to conditions printed on the reverse hereof. Dollar amount $1,000. Commission $7.50. Cable Expenses $2.50. Total $1,010. Applicant's signature (signed) Peter Regan. Full name Peter Regas."

On the reverse side of the application appears the following:

"It is hereby understood and agreed that no liability is to be attached to the Bank of Athens Trust Company for any loss or damage occasioned by consequence of error or delay in transmitting the message by telegraph, cable or wireless.

"It is also agreed that if payment for any reason is not effected, and cancellation of this transfer is requested, refund of the equivalent in Dollars, less commission and expenses, will be made on the basis of the market buying rate in New York for sight drafts on ———— at the time the refund of same is made and that the Bank of Athens Trust Company shall not be required to make such refund until it is advised by the respective correspondent that the order of payment is cancelled."

It is not denied that defendant duly communicated with said Banque de L'Union Parisienne, at Paris, France, and duly made available to said foreign bank, for delivery to the sender's brother and designee, who is one of the plaintiffs here, the sum referred to in defendant's Exhibit A as "Dollar amount $1,000." It also seems unquestioned that the Banque de L'Union Parisienne mailed to said plaintiff, for whom the remittance was intended, a check for that amount drawn on defendant. But plaintiffs assert and it seems to be admitted by defendant that this remittance never reached the sender's brother.

For defendant bank it is said that, at the time the sender made his arrangements at New York city with defendant, the sender knew, from defendant's Exhibit A, that defendant would employ

said Banque de L'Union Parisienne as subagent to bring about payment to his brother; that, by signing the filled in application, the sender agreed and consented to the employment by defendant bank of the said Banque de L'Union Parisienne; that the relationship between the sender and defendant bank was that of principal and agent; that, as what was to be done required the employment of a subagent and as such subagent was selected with the knowledge of the sender, such subagent, the Banque de L'Union Parisienne, became the sender's agent; that defendant bank did all it was required to do when it selected the Banque de L'Union Parisienne as subagent and transmitted to it the $1,000; there being no claim that defendant bank failed to use due care in the selection and employment of the subagent, which selection and employment were known to and approved by the sender; and that, for any loss sustained by plaintiffs because of the act, default, omission or neglect of Banque de L'Union Parisienne, plaintiffs can have no valid claim against defendant bank.

For defendant it is also argued that this case does not involve a cable transfer of exchange or the sale of foreign credit; that it involves merely the transmission of a sum of money to a person abroad. In this connection counsel for defendant refers to *Legniti* v. *Mechanics & Metals Nat. Bank of New York* (230 N. Y. 415, at p. 420), where in the opinion it is said: " There is a marked distinction between " cable transfers, as described in the opinion, and " a direction to a bank or other person to transmit a certain specific sum of money to a person abroad. In such cases the bank or transmitter is the agent of the person paying the money, and until the money is sent holds it as agent or trustee for the owner. Such were the cases of *Musco* v. *United Surety Co.* (132 App. Div. 300) and *People ex rel. Zotti* v. *Flynn* (135 App. Div. 276). In these latter transactions the intention of the payer is that the money he gives to his agent shall be sent abroad. It is the amount which he gives that is to be transmitted. How it is sent may be immaterial to him. If there be time, currency might be purchased and sent. If not, it may be transmitted in any form recognized in financial circles. It is not at all necessary that the sender or agent have credit in the place to which the money is to be sent. On the other hand, in the contract for credit it is not a specific sum which is to be sent but rather a specific credit which is to be purchased. The amount paid varies with the market. The actual thing that is done by the sender in both of these cases may or may not be the same, but the practice of the merchants and banks has recognized a difference; so have the courts."

That was said in the course of an explanation as to the general nature of transactions the purpose of which is to make credits or funds available abroad to the sender or his designee. It was not said for the purpose of stating anything decided in the case cited. That it could not have any such effect is evident from the decision rendered, which clearly appears from the opinion as a whole. Furthermore, what was thus said has no such meaning or application as counsel for defendant here would find in it. It was not held or even stated that, as matter of law, the intent of an agreement such as that evidenced by defendant's Exhibit A, in the present case, is, if the local bank's foreign correspondent be approved by the sender, that the local bank is obligated to do nothing more than to authorize its foreign correspondent to use credit, established by the local bank, for the purpose of accomplishing the transfer of funds to the sender's designee.

To that effect defendant has cited no precedent in this jurisdiction.

Again, while it is indicated that the sender gave defendant the $1,000 for the purpose of having it paid to his brother at Marseilles, France, it does not conclusively appear from these papers that the amount was to be paid at Marseilles in dollars. But even if the parties agreed that the amount was to be paid at Marseilles in dollars, that would seem to afford no sufficient basis for finding that the defendant did not agree to have the amount paid to the sender's designee.

Defendant cites *Nicoletti* v. *Bank of Los Banos* (190 Cal. 637; 214 P. 51), decided in the Supreme Court of California March 20, 1923. In that case a majority of the court stressed a stipulation as to the facts as well as the words " to be remitted " appearing in a writing delivered by the bank to the sender at the time the transaction was arranged, stating, however (190 Cal. 637, 640; 214 P. 51, at p. 52): " If there had been an express agreement to deliver the money," to the person designated by the sender, " there is no doubt that the plaintiff would be entitled to recover for the failure to do so. But the agreement * * * was an agreement to *remit.* * * * An agreement to ' remit ' or ' transmit ' money is an agreement to send and not an agreement to deliver. The distinction is important because it fixes the status of the subagencies through which the money is to be transmitted and the consequent responsibility for the negligence of such subagencies." After citing *Katcher* v. *American Express Co.* (94 N. J. L. 165; 109 A. 741) in support of the views expressed in the prevailing opinion, and after referring to rulings in Massachusetts and California relating to " the duty of a bank receiving commercial paper collection at a distant point," the majority opinion in the *Nicoletti* case continues: " It follows, then, that an agreement by

a bank to remit money implies an agreement to transmit the same through the ordinary banking channels and that such agreement is fully complied with when the bank has exercised due care in the selection of the subagents to which the money is transmitted in the ordinary course of banking business. The implied agreement between the parties was that plaintiff's money should be remitted by the defendant through the ordinary banking channels. It was stipulated that such was the actual agreement and the court found as a fact that the money was so transmitted."

From that decision of the Supreme Court of California two justices dissented. Paraphrasing expressions found in the dissenting opinions and extending the suggestions there made, it may be asked why the courts should hold that a memorandum such as defendant's Exhibit A in this case should be considered to evidence an agreement between the sender and the bank to which he pays a fee and to which he intrusts his money, an agreement by which that bank is not obligated to have the transaction completed? Is the form which is handed, all filled out, perhaps to a person not practiced in banking matters and not versed in legal principles applicable thereto, to block inquiry as to the true intent?

In the present instance the memorandum contains neither the word " remit " nor the word " deliver." At the trial, possibly the word " payable," or what appears on the back of the " application," may be deemed important.

But are cases of the kind to be decided on the basis of fine distinctions as to the meaning of some word such as " remit " or " deliver? " Is that fair to a sender uninformed as to relevant banking practice or law? Conceding that such transactions often occur between business concerns, whose representatives may be well informed, and banks, nevertheless in many instances the sender is not versed in such matters. Frequently he knows little or nothing as to our language or its expressions.

Are courts to say to the man in the street that he must lose his money because a word such as " remit " was used, by the bank be it remembered, instead of a word such as " deliver? " The suggestion does not seem to be consonant with justice. Rather might it be held that the bank undertakes that the transfer of funds, sought and paid for, will be accomplished, unless a different intent is clearly shown. The sender may go to a bank or to a responsible banker because he does not want to take any risk. It might be fair to say that the bank should see that it is paid enough to cover all risks or should make clear just what risks it is not assuming.

In one of the dissenting opinions referred to above it is pointed out that in relation to negotiable paper received or deposited by

a bank for collection in the usual course of banking practice, the New York rule differed from that relied on in the prevailing opinion. In the present case counsel for defendant says the rule has been changed in New York by amendments to the Negotiable Instruments Law (§§ 350-a, 350-d, as added by Laws of 1929, chap. 589, § 1). But this is not an action on a negotiable instrument. Moreover, there appears to be no valid reason why rules applying to the ordinary methods of collecting negotiable instruments, through banking channels, should be applied for the purpose of ascertaining the intent of a contract which is not in the category of negotiable instruments.

While seeking the intent it is to be remembered that, in this instance, the bank prepared the writing, and that the bank's representatives usually have knowledge superior to that of the sender, as to such matters.

In a brief for defendant it is also contended that, as the employment of a foreign correspondent was essential, judgment for defendant would have to be granted even if the sender had not known what agency defendant would employ. Neither as to that, nor as to his other contentions, does counsel for defendant appear to correctly state the law.

The question presented seems to be a question as to the intent of the parties, an intent which, in this case, the writing, defendant's Exhibit A, does not purport to express. Was it the intent that defendant would have the remittance paid to the sender's designee? Was the intent that defendant would establish the credit with its foreign correspondent and see that it and its foreign correspondent exercised due care? Was it the intent that defendant would fully perform if it exercised due care on its part and established the credit with its foreign correspondent?

On the present application, there are averments for defendant to the effect that the sender was informed that defendant had no branch in Paris or in Marseilles and could not effectuate the transfer other than through its correspondent, Banque de L'Union Parisienne, and that the sender "expressed himself as satisfied with this arrangement." On the other hand, there are averments for the plaintiffs to the effect that defendant bank through a vice-president undertook to transmit the $1,000 to the sender's brother at Marseilles, France; the word "transmit" evidently being employed for "deliver."

The court is of the opinion that, from these papers, the intent of the parties cannot be satisfactorily determined; and that the determination should be made after a trial. Neither side should be granted summary judgment.

The motion is denied.