WALLACE D. EYRE, as Trustee in Bankruptcy of the Estate of CLEARFIELD COUNTY COAL COMPANY, INC., Respondent, *v.* THE COAL AND IRON NATIONAL BANK OF THE CITY OF NEW YORK, Appellant. (Actions Nos. 1 and 2.)

First Department, April 4, 1924.

**Bills and notes — action by trustee in bankruptcy of coal corporation to recover from bank value of checks payable to bankrupt indorsed in its name and deposited in personal account of president — title to checks was not in bankrupt — proper inquiry by bank would have disclosed such fact — evidence — testimony by president of bankrupt that he had paid by check for coal for which checks in suit were given was admissible.**

In an action by the trustee in bankruptcy of a coal corporation to recover from the defendant bank the value of checks payable to the bankrupt indorsed in its name and deposited in the personal account of its president, it appeared that although the bankrupt had been incorporated prior to the deposit of the checks in suit to take over the personal coal business of its president, it had been agreed that it should not begin business until after said date; that prior to the commencement of business by the bankrupt invoices on its stationery were sent out to customers in order to get its name before the public and the checks in suit were made payable to the bankrupt by reason of such invoices being sent out; that the checks, upon their receipt, were indorsed in the name of the bankrupt by the president's bookkeeper and deposited to the president's

personal account; that the bank did not receive any part of the funds which represented the proceeds of any of the checks in suit; and that during the period that these checks were received the bankrupt did not owe any sum to any creditor.

*Held*, that title to the checks in suit was never in the bankrupt which did not legally succeed to the individual coal business of its president until after the deposit of such checks; and that proper inquiry by the bank would have disclosed these facts as well as the fact that the deposit of the checks in the president's individual account was lawfully made.

Testimony by the president of the bankrupt that he had paid by check for the coal in payment for which the checks in suit were sent to him was collateral only to the principal fact of payment and should have been received as proof of the method of payment claimed to have been used.

APPEAL in each action by the defendant, The Coal and Iron National Bank of the City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of January, 1923, upon the decision of the court, both sides having moved for the direction of a verdict at the close of the case, and the jury having been thereupon discharged, and also from orders entered in said clerk's office on the 10th day of January, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Cook, Nathan & Lehman* [*Emil Goldmark* of counsel; *Alfred A. Cook* and *Edgar M. Souza* with him on the brief], for the appellant.

*Ambrose V. McCall* [*John T. Loughran* of counsel; *Frank M. Swacker* with him on the brief], for the respondent.

DOWLING, J.:

The examination of this record satisfies me that the facts claimed by defendant to be established thereby must be found to be satisfactorily proven. They are as follows:

For about twelve years prior to the trial of these actions (October 24, 1922) one Edward G. Murray had been, and was then, the president of the E. G. Murray Lighterage and Transportation Company, which company for about two years prior to April, 1919, had maintained a corporate bank account with the defendant bank. On April 19, 1919, Murray, who also operated a coal business in his individual name, opened a personal account with the defendant, making an initial deposit of $2,501.13. Murray had been personally known to the officers of the defendant bank for about two years prior to the opening of this personal account, which was his sole individual account in the defendant bank and was used by him in connection with his coal business, and to deposit therein the proceeds thereof. In or about July, 1919, Murray caused a corporation to be organized under the name of the Clearfield

County Coal Company, Inc. The certificate of incorporation was filed in the office of the Secretary of State of July 30, 1919, and a duplicate copy filed and recorded in the office of the clerk of the county of New York on August 1, 1919. The organization meeting of the incorporators and the first meeting of the directors were held on August 15, 1919. At these meetings there was submitted an offer from Murray to sell, assign and transfer to the corporation all of the assets of the coal business then owned by him at 24 State street, borough of Manhattan, New York city, including all the contracts and agreements connected with said business, for the consideration of $100,000, payable by the issuance to Murray of full paid capital stock of the corporation, of the par value of $100,000. The incorporators recommended that the board of directors accept the offer and cause the issuance of 1,000 shares of the capital stock as " full consideration and payment for the business and property so to be sold, assigned and conveyed " to the coal company. The board of directors, three in number, who were the same persons as the incorporators, at the first meeting held on August 15, 1919, approved and accepted the offer of Murray and authorized the president and secretary, " upon delivery of the said business and property as set forth in said proposition, * * * to issue and deliver in accordance with these resolutions, 1,000 shares of the capital stock of this company." The offer and resolution of approval did not convey any present title to the property. If considered as a contract it remained executory merely. It is apparent that a formal or written transfer was contemplated.

Although a single certificate of stock for 1,000 shares was made out in the name of Edward G. Murray, dated August 15, 1919, and stamped, up to the time of the trial it had never been removed from the stock certificate book. When the corporation was formed it was the intention to begin business when the stationery was printed. This took some little time and it was ready the early or middle part of September, 1919. The directors, however, unanimously agreed to postpone taking over Murray's business until January 1, 1920, for the reason, as stated by Murray: " I asked Mr. McCourt and Mr. Earley if they did not think it would be advisable not to turn over my business at that time [September, 1919] because it was getting so late in the year, if it would not be better to start the Clearfield County Coal Company's business on the first day of the calendar year; it would be much more — it would be much better; it would save the expense and time of making out two sets of tax reports for that year and being that there was no particular reason why it should be turned over

before then, we agreed that the company would start doing business on the 1st day of January."

The fact that the business of the Clearfield County Coal Company, Inc., was not to commence until January 1, 1920, was also established by the uncontradicted testimony of both William A. Earley and William J. McCourt. Earley was a former director and secretary of the said company. At the time of the trial he was a coal salesman and he had not been in the employ of either Murray or the coal company since about June 30, 1920. McCourt was a director and secretary of the Clearfield County Coal Company, Inc., from the first meeting of the directors until the bankruptcy. Earley stated that Murray directed that the business of the coal company should start January 1, 1920, and McCourt testified that " Mr. Edward Murray said that they would start business after January 1, 1920."

There was no written instrument covering the transfer. The Clearfield County Coal Company, Inc., took up the business after the first of the year 1920, opened a bank account on January 6, 1920, and only then started doing business. The by-laws gave the general management of the business to the president. At the first meeting of the directors resolutions were adopted empowering the president and secretary to open a deposit account with the defendant bank, to indorse checks for deposit therein, to draw checks thereon to the individual order of the signing officer, which checks so signed the company's bankers and banking connections were authorized to honor, and without restriction to sign, indorse, accept, make, execute and deliver any and all checks, notes, drafts and bills of exchange, but a copy of this resolution was not filed with the bank until January 6, 1920, on which date Murray personally opened the bank account in the name of the Clearfield County Coal Company, Inc.

It is admitted that the bank account of the coal company was not opened until January 6, 1920, and that prior to this date the coal company had no bank account whatsoever and had no books, the books of account only starting on January 7, 1920. When this bank account opened, the deposits in Murray's personal account ceased and his personal account became inactive.

The dummy directors resigned at the first meeting held on August 15, 1919, and Edward G. Murray was elected a director and president, William J. McCourt, a director and vice-president, William A. Earley, a director and secretary, and Joseph Dudley Murray, a brother of Edward G. Murray, treasurer. There was no change in the officers or directors of the corporation from August

44

15, 1919, until December 7, 1920, when Joseph Dudley Murray was elected a director and William J. McCourt, secretary, in place of William A. Earley who had resigned, his resignation being in writing and dated June 30, 1920, although not accepted until December 7, 1920.

Earley had been in Murray's personal employ from June or July, 1919, until December 31, 1919, and on January 1, 1920, when Murray turned over his business to the coal company, entered the employ of the coal company where he remained until June 30, 1920. During the period prior to December 31, 1919, his salary was paid by Murray personally. Prior to January, 1920, the Clearfield County Coal Company, Inc., had no funds and paid no salaries whatsoever. McCourt was the manager of the E. G. Murray Lighterage and Transportation Company, with which company he had been connected for over ten years, and he, together with Earley, had their offices in the room adjoining that of Murray at 24 State street, which two rooms constituted also the office of the E. G. Murray Lighterage and Transportation Company, so that the board of directors were all in the same office.

Following the organization meeting of August fifteenth, the affairs of the coal company were conducted in the informal manner in which such one-man companies are usually conducted. The three directors decided matters by unanimous consent without the formality of written minutes. As expressed by Earley, informal meetings were held generally regarding the business — " Very near daily, I would say. We were meeting every day. We were all there together." Edward G. Murray, with the knowledge and consent of all the directors, alone handled the financial end of the business and no objections thereto were made at any time by the board of directors. The directors unanimously decided that until after the first of the year 1920 checks drawn to the order of the coal company should be deposited in the personal account of Edward G. Murray. Although the by-laws of the coal company provided that the funds of the corporation were to be kept in the care and custody of the treasurer and were to be deposited by him in the name of the corporation in such bank or banks as the directors might elect, at no time from the organization meeting of the coal company until it was adjudicated a bankrupt, during all of which time Joseph Dudley Murray was treasurer, did he in the slightest respect have anything to do with the finances of the corporation or the handling of its funds. During that entire period all the funds of the corporation were handled by Edward G. Murray. Further, the directors took instructions from Edward G. Murray as to what business was to be done, how it was to be done, and

Eyre v. Coal & Iron National Bank. Nos. 1, 2. 691

App. Div. 686]                First Department, April, 1924.

as to the general management of the Clearfield County Coal Company, Inc.

At or about the middle of September, 1919, the coal company, so as to be ready to do business when it should be decided to begin doing so, obtained its stationery, consisting of letterheads, invoices and other blanks, containing the name of the coal company printed thereon. In order that the name of the Clearfield County Coal Company, Inc., which was to take over Murray's business on January 1, 1920, should become known in the trade, in some instances and particularly with new accounts, it was thought to be a very good plan to have the name get before the public prior to January 1, 1920, the time it was to commence business. There was evidence, also, that the sending out of invoices in the name of the Clearfield County Coal Company, Inc., had been done against Murray's instructions and that it was then decided to continue to use the stationery of the Clearfield County Coal Company, Inc., particularly as one contract which Murray contemplated turning over to the company extended beyond January 1, 1920, and it would, therefore, have been necessary to eventually use this stationery in this instance. There were, therefore, a small number of invoices sent out on the stationery of the Clearfield County Coal Company, Inc., and the five checks in suit were made payable to the Clearfield County Coal Company, Inc., by reason of the invoices being sent out in this manner. It is to be noted, however, that in one instance a check of the Eyre Fuel Company, dated November 6, 1919, for $1,082.87, made payable to the Clearfield County Coal Company, Inc., the subject of the second cause of action in action No. 2, was in payment of four items, including one for $158.34, being an invoice of September 15, 1919, billed to the Eyre Fuel Company on the billhead of Edward G. Murray. This was clearly Murray's property, as he testified positively and without contradiction that he made no agreement, verbal or written, assigning the coal for which this invoice was sent to the Clearfield County Coal Company, Inc. The notation in pencil of the name " Clearfield County Coal Company " appearing on this billhead over Murray's name was placed thereon in the Eyre office by its accountant. It did not appear, however, why this was done and Murray testified that he had not directed the Eyre Company to make out the check in this way. The checks, upon their receipt, were indorsed in the name of the Clearfield County Coal Company, Inc., by one Barth, who was the bookkeeper for Murray, and deposited to Murray's personal account. Apparently, at least part of the proceeds of these checks was used for the benefit of the Clearfield County Coal Company, Inc., as Murray testified that the coal covered by the checks in suit

was paid for by him individually from his personal funds. This testimony, however, was later striken out by the court, upon the ground that as the payments were made by Murray's checks his testimony was not the best evidence of the fact of payment. He subsequently testified, however, definitely and without contradiction, and this testimony was permitted to stand, that while he was in the coal business as an individual, which covers the period in question, he personally paid for all coal purchased on the twentieth of the month following the month in which the coal was shipped. This includes the single purchase of coal made in the name of the Clearfield County Coal Company, Inc., from the Pennsylvania collieries on October 30, 1919. During the period from August 15, 1919, to December 31, 1919, Fred W. Barth, who was Murray's personal bookkeeper in charge of his books, made out the checks — Murray's checks — for the coal bought. After the Clearfield County Coal Company, Inc., commenced business in January, 1920, Murray had to guarantee the payment for the coal which it was then purchasing, and for which purpose he wrote a letter of guaranty dated January 19, 1920.

It was conceded that the defendant bank did not receive any part of the funds which represented the proceeds of any of the checks in suit. Moreover, during the period that these checks were received, to wit, October and November, 1919, the coal company did not owe any sum to any creditor whatsoever. Even the attorney for the trustee testified that no creditor now represented by the plaintiff was a creditor prior to January 1, 1920.

On January 5, 1920, the day before the opening of the account of the Clearfield County Coal Company, Inc., in defendant's bank, the last deposit was made in Murray's personal account, the amount thereof being $3,425.85. Thereafter five checks were debited against this account, the last on January 12, 1920, and from January 12, 1920, until July 12, 1920, when the account was closed, there remained an inactive balance of $1,064.92.

Upon these facts, it is established that title to the checks in suit was never in the Clearfield County Coal Company, Inc.; that such corporation did not legally succeed to Murray's coal business until after January 1, 1920, the date to which its board of directors unanimously postponed the delivery of the business; and that any proper inquiry required to be made by defendant would have disclosed these facts, as well as that the deposit of the checks in suit in Murray's individual account in defendant bank was lawfully made, with the full knowledge, consent and approval of the board of directors of the corporation and by their authority.

The checks involved in these suits were deposited between October 27, 1919 and November 10, 1919. In the actions of this same plaintiff against the Rondout National Bank, were involved checks deposited with the latter by Murray between November 6, 1919, and February 2, 1920 (the latter date being a month after January 1, 1920, when title to the coal business was to pass to the corporation). Substantially the same questions were there involved as here. The case was tried at the Ulster County Trial Term of the Supreme Court in October, 1922, and Mr. Justice STALEY, in deciding in favor of defendant, handed down the following opinion:

" The Clearfield County Coal Company, Inc., was incorporated in this State on July 30, 1919, and certificate of incorporation thereafter filed in the office of the clerk of the county of New York. Its general purpose was to buy and sell coal, coke and wood. The amount of its capital stock was to be $100,000 and the amount of the capital with which the corporation was to begin business was the sum of $1,000. On October 8, 1921, it was adjudged a bankrupt and the plaintiff was duly appointed trustee in bankruptcy of its estate. Between November 6, 1919, and February 2, 1920, ten checks aggregating $93,983.09 payable to the Clearfield County Coal Company, indorsed by Edward G. Murray, as president, were deposited in the defendant bank to the personal credit of said Murray and thereafter paid out by the defendant upon checks drawn by him upon said account. These actions are brought to recover the value of said checks which it is alleged were converted by the defendant bank to the use of said Edward G. Murray.

" The defendant's answer is a denial of the allegations in the complaint that the checks were the property of the corporation, and as a separate defense alleged that Murray was sole stockholder and had authority to endorse all commercial paper payable to the company, and, further, that the claims of creditors herein arose subsequent to the acts complained of and that the company was solvent at the time of the commission of such acts.

" When a check payable to a corporation endorsed by an officer thereof for collection and deposit to his individual account is presented to a bank, it is put upon inquiry to ascertain whether the apparent situation is the real situation, and the authority of the officer to endorse the check and personally acquire its proceeds, and if no inquiry is in fact made the bank is chargeable with notice of such facts as would have been discovered by the exercise of reasonable diligence in making such inquiry. (*Ward* v. *City Trust Company*, 192 N. Y. 61, 69; *Wilson* v. *M. E. R. Co.*, 120 N. Y. 145, 153.)

" If such inquiry would have disclosed that the checks were the property of the corporation and that their deposit with the defendant bank to the individual credit of Murray was a diversion of corporate funds, the defendant undoubtedly would be liable, but if such inquiry would have disclosed facts justifying a reasonable and prudent person to have concluded that the checks were the personal property of Murray and not of the corporation, the defendant would not be liable.

" The issue in this case in the main turns upon a determination of the question of whether the coal business at 24 State street, New York city, during the period covered by the checks in question was being conducted by the corporation or conducted by Murray personally. I have concluded from all the evidence in the case, that the business was conducted by Murray personally, and that an inquiry would have disclosed that fact, and therefore that the proceeds of these checks were his personal property.

" I do not deem it necessary in this memorandum to discuss all the evidence which has been presented bearing upon this issue, suffice it to say, that it has been carefully examined and weighed by me, and that the greater weight, in my judgment, is in favor of the conclusion herein stated.

" It is, therefore, unnecessary because of this conclusion to refer to the many authorities in this State which are urged by both parties relating to the rules of law governing liability in cases of the unlawful use and diversion of corporate funds. The principles in those cases apply only where the business is being conducted by the corporation and have no application here where the business was being conducted by the individual to whose credit all checks were placed by the defendant."

This judgment was affirmed by the Appellate Division, Third Department, without opinion (*Eyre* v. *Rondout Nat. Bank*, 206 App. Div. 806).

I am of the opinion also that it was error to strike out the testimony of Murray that he had paid by check for the coal in payment for which the checks in suit were sent to him, and though he was permitted to testify that he had personally paid for it, it was error to strike out his testimony that it had been paid for by check and that testimony should be reinstated in the evidence. This testimony was collateral only to the principal fact of payment, and should have been received as proof of the method of payment claimed to have been used by Murray. (*Fairchild* v. *Fairchild*, 64 N. Y. 471; *Cullinan* v. *Furthmann*, 70 App. Div. 110; 22 C. J. pp. 978, 983, 984, §§ 1224, 1227,)

The judgments and orders appealed from should, therefore, be

reversed, the defendant's motion for the direction of verdicts in its favor granted, and judgment thereupon directed to be entered, with costs and disbursements of this appeal and costs of the action awarded to defendant.

CLARKE, P. J., SMITH, MERRELL and McAvoy, JJ., concur.

Judgments and orders reversed, with costs, defendant's motion for direction of verdicts in its favor granted and judgments ordered to be entered thereupon, with costs to the defendant.