(61 App. Div. 195.)

### EINSTEIN v. DUNN, Sheriff.

(Supreme Court, Appellate Division, First Department. May 17, 1901.)

1. CONVERSION—ESTOPPEL.

Plaintiff became the owner of certain goods stored in a warehouse, by the transfer to him of the warehouse receipt and the issuance of a new one in his name. Defendant, sheriff, seized the goods under an ex parte order made in replevin suits against the original owner of the goods, in which suits plaintiff, though not a party thereto, moved to have the ex parte order vacated, on which motion no order was entered. *Held*, in conversion for the property, that plaintiff was not estopped by such motion from prosecuting the action, for, as he was not a party to the other action, he was not confined to the remedy therein.

2. SAME—COURT'S ORDER—NO JUSTIFICATION.

An order directing the sheriff to seize certain goods will not justify the seizure of goods not contained in the order.

3. SAME—SURRENDER BY WAREHOUSEMAN.

Where plaintiff acquired title to property stored in a warehouse by a transfer of the warehouse receipt and the issuance of a new one in his name, the delivery of the goods by the warehouseman to the sheriff on replevin process will not defeat a recovery against the sheriff for conversion, as a voluntary surrender by plaintiff, as the surrender was made by the warehouseman knowing and acknowledging plaintiff's right.

4. SAME—STATUTES.

Code Civ. Proc. § 1709, provides that, at any time before a replevied chattel is actually delivered to either party, an affidavit of his claim may be made and delivered to the sheriff by any one not a party to the action, who claims the chattel as against the defendant; and section 1710 prescribes that any one serving such affidavit may maintain an action against the sheriff for damages thereby sustained, if he delivers the chattel to the plaintiff. *Held*, that conversion could be properly maintained against a sheriff by one, though he failed to make such affidavit,

for the taking of goods not authorized by the process under which the levy was made, as such provisions only protect the officer in a rightful taking.

5. SAME—ADVANCES—AMOUNT OF RECOVERY.
   In conversion for goods acquired as security for advances made thereon, a recovery for the full value of the goods was properly allowed, and not a recovery for the amount advanced.

6. SAME—INTEREST.
   An instruction, in conversion, that plaintiff was entitled to interest on the value of the goods from the date of the conversion, was proper, where the property was merchandise kept for sale.

Appeal from trial term, New York county.

Action by Isaac D. Einstein against Thomas J. Dunn, as sheriff of New York county. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Edward S. Johnston, for appellant.
Gratz Nathan, for respondent.

PATTERSON, J. This is an action to recover damages for the wrongful conversion of 11 cases of merchandise which were on storage with the F. C. Linde Company, and the warehouse receipt for which was issued to and held by the plaintiff, who had advanced moneys upon the merchandise. Other advances had been made on it by the F. C. Linde Company. The plaintiff paid off the claim of that company, and succeeded to its rights as creditor. All the goods belonged originally to Kleinman, Yohn & Co., and by that firm were originally put in the warehouse of F. C. Linde Company. On March 11, 1898, Kleinman, Yohn & Co. gave to the plaintiff notes for the aggregate sum of $3,505.25, with a warehouse receipt as collateral. That receipt was numbered 15,789, represented the 11 cases, and was issued in the name of Kleinman, Yohn & Co., which firm indorsed it to the plaintiff. On March 12th the plaintiff, in writing, notified the F. C. Linde Company that the warehouse receipt, numbered 15,789, issued to Kleinman, Yohn & Co., had been transferred to him, and that the merchandise represented by it was now his property, and that any withdrawals of the goods could only be effected upon an order from him, accompanied by the warehouse receipt. In answer to that communication, the warehouse company sent to the plaintiff a letter stating:

"The regular way is, for you to surrender the receipt and take out one in your name, or get Messrs. Kleinman, Yohn & Co. to make an order directing us to transfer the cases to your account."

In compliance with that suggestion, the plaintiff surrendered the certificate referred to, and there was issued to him, in substitution therefor, another certificate, bearing date March 10th (although it was not delivered until March 14th), numbered 15,789, in which it is stated that the 11 cases of merchandise were received for, and on account and risk of, the plaintiff, and that the merchandise was deliverable only upon the indorsement and surrender of the receipt and

the payment of charges. Thus, by transfer from Kleinman, Yohn & Co., and by the issuance to the plaintiff of the warehouse receipt, the legal title and the absolute right of control of the 11 cases of merchandise were placed in the plaintiff. In August, 1898, Kleinman, Yohn & Co. failed, and shortly thereafter two actions in replevin were brought against that firm,—one by Lesher and others, and the other by Hayes and others,—and the usual process in such actions was delivered to the sheriff. Accompanying such process was an inventory of the specific property claimed by each of the plaintiffs in those replevin actions. The property covered by the warehouse receipt issued to the plaintiff is not included in that described in the process in the replevin actions. There is no contradiction in the evidence that the goods were not covered by, nor in any way identical with, the merchandise mentioned in the requisitions in replevin. On August 19, 1898, one of the defendant's deputies went to the F. C. Linde Company warehouse, and served upon the person in charge thereof copies of the replevin papers in the Lesher action against Yohn and others. He was accompanied by one Goldberg, the attorney for the plaintiff in that action. That attorney, who has since been disbarred, presented an ex parte order, procured by fraud and misrepresentation from a justice of the supreme court, in the following words:

"Ordered, that F. C. Linde Company, warehousemen in the city of New York, upon service of a verified copy of this order upon them, and upon payment to them of their lawful charges, deliver to Thomas J. Dunn, Esq., sheriff of the county of New York, the chattels, goods, wares, and merchandise stored with them by the defendants, or any of them."

Goldberg paid the amount of the storage charges. The 11 cases of merchandise were left with the warehouseman from August 19th, which was a Friday, until the following Monday, August 22d, when Goldberg and the deputy sheriff presented an order signed by the sheriff requesting the F. C. Linde Company to deliver the merchandise to bearer. Delivery was made, and Goldberg gave a receipt for the goods. They were taken away by a cartman. The defendant sought to justify his acts under the process in both actions. The Hayes action was not commenced until after the seizure of the goods in the Lesher case. The defendant further attempts to justify under the ex parte order above mentioned. He also claims that the plaintiff is not entitled to recover, because, he (the defendant) having had the property in his possession for a period of at least three days, none of the defendants in the actions in which the writs of replevin were issued, nor this plaintiff, served notice of exception to the undertakings given by the plaintiffs therein, and that the provisions of section 1709 of the Code of Civil Procedure were not complied with. It is conceded in the record that the affidavit required by that section was not served. It further appears in evidence that a motion was made by the plaintiff in this action to vacate and set aside the ex parte order above referred to. No order of the court was ever entered upon that motion. There is printed in the record what purports to be an opinion of the justice before whom that motion was argued, in which it is stated that if the plaintiffs in the replevin actions should within five days give a stipulation making the present plaintiff a party de-

fendant to those actions, and allow him to litigate therein his claim to all or any of the property taken from the warehouse, and procure an undertaking to be made by a surety company in the sum of $5,000 to satisfy any judgment which Einstein might recover in those actions, the motion to vacate would be denied, and in default thereof it would be granted. Nothing was done, apparently, by the plaintiffs in the replevin actions to comply with those conditions.

It is claimed by the defendant that the plaintiff is estopped from prosecuting this action because by moving in the replevin actions he elected a remedy and sought redress in those actions, and that he is bound by such election. This contention requires but little consideration. The motion was never disposed of by the entry of an order. He was therefore never admitted as a party to the replevin actions, nor did he ever apply to be so admitted. He moved to vacate the order, and, if we may refer to the opinion of the court, it was held that the motion should be granted unless the plaintiffs in the replevin actions gave certain stipulations and security to the moving party. There was no such situation created as would confine the plaintiff to a remedy in those actions.

The ex parte order affords no protection whatever to the sheriff, and he cannot justify under it. As affecting the interests of the plaintiff in this action, it was an absolute nullity. The warehouse company was not in any manner required to respect it, even by its terms; for it required only the delivery to the possession of the sheriff of goods stored by Kleinman, Yohn & Co., while the 11 cases of merchandise were stored by the plaintiff when the warehouse receipt therefor was issued to him. A suggestion is made that, in the surrender of the 11 cases to the sheriff, the warehouse company acted as the agent of Einstein. No such agency existed, nor could authority to surrender be implied; but, on the contrary, the duty of the warehouse company was to protect the holder of the warehouse receipt, to retain possession of the merchandise, and to surrender it to a third party only when authorized so to do by the holder of the warehouse receipt, or under compulsion in pursuance of due process of law. Nor can the voluntary act of the warehouse company in turning the property over to the sheriff avail the latter as a defense to the action for conversion. The transfer to the sheriff was made by the warehouse company against the protest of the real owner of the goods, and the sheriff was cognizant of the plaintiff's claim. The enforcement of the replevin process against the goods was resisted by the plaintiff, and as the surrender was made by the warehouse company, knowing and acknowledging the plaintiff's right, it cannot be held that the wrongful act of the sheriff in converting the property discharged him from liability for that conversion. The merchandise was not in the actual possession of the plaintiff, although he was entitled to the immediate possession on the presentation of his warehouse receipt. The case is altogether different from those cited by the learned counsel for the appellant in the endeavor to support his contention that the action will not lie because of the act of the warehouse company in yielding the possession of the goods to the sheriff's officer.

The affirmative defense is also relied upon that the action cannot

be maintained because of a failure of the plaintiff to comply with the provisions of sections 1709 and 1710 of the Code of Civil Procedure. The answer contains the following allegation:

"That, before the delivery of the said chattels to the said plaintiffs in said actions in which said writs or requisitions of replevin had been issued, no affidavit had been made or delivered to this defendant by the plaintiff herein, or any one acting in his behalf. stating that he had made such claim, and specifying the chattel or chattels to which it related, or pursuant to section 1709 of the Code of Civil Procedure."

It is admitted that the plaintiff did not, within three days after the service of the writ and the taking of the property, make and deliver such an affidavit. The provisions of the two sections of the Code of Civil Procedure under consideration have not changed the rule as it existed before the enactment of that Code in this regard. It is said in King v. Orser, 4 Duer, 437:

"And it has been insisted that, as no such claim and affidavit were made by the plaintiffs, they cannot be entitled to recover; but we are satisfied that the objection is groundless, and that the provisions that have been quoted [that is, section 216 of the Code of Procedure of 1852, for which sections 1709 and 1710 of the Code of Civil Procedure of 1899 seem to have been substituted] are only applicable when the property has been taken by the sheriff in the proper discharge of his duty; that is, from the possession of the defendant or his agent. They were never meant to protect him where his original taking of the property was a wrongful act, for the consequences of which he was immediately liable."

And in Otis v. Williams, 70 N. Y. 208, it was held that a requisition to a sheriff in an action, as it was then called, for the claim and delivery of personal property, only authorizes the taking of the chattels specified from the defendant named in the action, or his agent. It is no protection when he takes them from another in an action for trespass brought by the latter. The sheriff was bound to follow his writ. He was required to take certain property described in the replevin papers, and nothing else. When he took other property, he was a trespasser beyond the protection of his process. His liability became at once fixed, independently of any provision of the Code; and the reasonable construction of the Code provisions is that they were intended for the benefit of an officer acting within the requirement of the process he is seeking to enforce. In all the cases which have been called to our attention in which a noncompliance with the provisions of sections 1709 and 1710 of the Code of Civil Procedure has defeated actions for conversion brought against sheriffs, it would appear that that officer had taken into his possession the property called for by the replevin papers.

The learned judge at the trial properly held, we think, that there was no justification for the act of the sheriff, and that he was liable for the conversion of the plaintiff's merchandise, and left to the jury only the question of the value, and directed that they should find a verdict for the full value of the goods and interest. The point was made by the appellant that a recovery must be limited to the amount of the advances of the plaintiff on the merchandise, and that he was only a pledgee with a special property right, measured by the extent of his advances. Whatever may have been held in other states respecting the amount of a recovery under such circumstances, it has

been held in this state that, in an action for conversion of merchandise upon which a plaintiff had made advances, a recovery could be had for the full value of that merchandise. In Mechanics' & Traders' Bank of Buffalo v. Farmers' & Mechanics' Nat. Bank of Buffalo, 60 N. Y. 40, the action was brought for the conversion of wheat upon which the plaintiff had made advances, and it was held that the plaintiff could recover the full value of the wheat; the court saying:

"The point is not well taken that the plaintiff cannot recover more than the amount of its advances. As the defendants were wrongdoers, the plaintiff was entitled to recover the full value of the wheat, and, if a recovery was had, liable to account to the owner, whoever it might be, for whatever remained over and above the plaintiff's advances."

The trial judge also instructed the jury that, to the value of the goods, the plaintiff was entitled to interest from the date of the conversion. An exception was taken to that instruction. Where the property converted is merchandise kept for sale, interest may be added to the value (Ormsby v. Mining Co., 56 N. Y. 623; Tyng v. Warehouse Co., 58 N. Y. 308); and it is not error for the court to instruct the jury that they must allow such interest. In Suydam v. Jenkins, 3 Duer, 627, it is said that interest is justly regarded as a constituent part of the indemnity to which the plaintiff is entitled, and which it is the duty of the court, and of the jury under the direction of the court, to allow. In McCormick v. Railroad Co., 49 N. Y. 315, it is remarked:

"Interest is as necessary a part of a complete indemnity as the value itself, and, in fixing the damages, is not any more in the discretion of the jury than the value;" citing Andrews v. Durant, 18 N. Y. 496.

No other exceptions require consideration, and the judgment and order appealed from should be affirmed, with costs. All concur.