(58 App. Div. 103.)

MILLER v. MILES.

(Supreme Court, Appellate Division, First Department.   February 8, 1901.)

CONVERSION—EVIDENCE.
   Plaintiff having delivered his stock in a corporation to defendant, who
   paid nothing for it under an agreement that he should deposit it and
   50 cents a share for purposes of a reorganization, and return it or its
   equivalent in certificates of the reorganized company, defendant, who
   received the proceeds of a sale of the property represented by the stock,
   and refused to return anything, is guilty of a conversion.
      Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Ira M. Miller against Lucius C. Miles.   From a judgment on a verdict for plaintiff, and from an order denying motion for new trial, defendant appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

George D. Beattys, for appellant.
William H. Hamilton, for respondent.


HATCH, J.   The complaint in this action avers that the plaintiff was the owner of, or in control of, 1,650 shares of the capital stock of the Akron Street-Railway & Illuminating Company, of Akron, Ohio, 600 shares of which the plaintiff owned, and 1,050 shares of which he held as collateral security for the payment of certain promissory notes; that on or about the 19th day of January, 1899, plaintiff delivered the whole of said shares of stock to the defendant for the express purpose of enabling him to deposit said shares with the Manhattan Trust Company, in New York, in pursuance of a plan for the reorganization of said street-railway company; that under said plan it was provided that with each share of stock should be deposited with the trust company the sum of $5 in cash, and that all the property rights and interest of the said railway should be purchased by a committee chosen by the bondholders of the company, and thereafter a new corporation was to be created, which should issue to the stockholders making the deposit new stock for their deposit, in proportionate amounts; that subsequently such plan was modified by requiring only the deposit of 10 per cent., or 50 cents per share, in place of $5 per share; that on the 20th day of January, 1899, the defendant deposited with said trust company said shares as his own property, and also deposited therewith 10 per cent., or $825; that thereafter the new corporation was organized, which purchased all the property of the said railway, and the plaintiff became entitled to receive thereby a proportionate share of the stock therein; that after the payment by the new corporation the stock was worth $20 per share for common, and $56.50 for the preferred; that, in accordance with the plan of distribution, plaintiff became entitled to have and receive for his shares of stock, over and above the assessment which had been paid thereon, $12,911.25.   The complaint further avers that the defendant has re-

fused to account to this plaintiff for the said stock, or the proceeds thereof, and that he holds the same to plaintiff's use. The complaint also contained a count charging the misappropriation and conversion of the moneys received for and on account of the stock, and avers that the defendant has fraudulently, and in violation of the trust and confidence reposed in him, neglected and refused to pay over the moneys which he has received to plaintiff's use. The defendant by answer denied the averments of the complaint, and for an affirmative defense alleged a purchase of the said shares of stock for a valuable consideration prior to its deposit with the trust company, and that he was thereafter the owner and holder thereof for value. The evidence upon the trial tended fully to sustain the averments of the complaint. At the time the stock was delivered, the railway company was in the hands of a receiver. A plan of reorganization had been perfected, which required that the stock should be deposited with the trust company, and a payment made thereon of $5 a share. None of the stockholders desired to make this payment, and it is quite evident that they regarded the stock as possessed of little value. But they were seeking to perfect some scheme of reorganization by which the road might become the subject of local control, in which event it was doubtless supposed that the stock would appreciate in value. At this juncture the plaintiff was requested to meet the defendant and others for a conference, and did so. It was then stated that it had been arranged in New York that the stock, for reorganization purposes, might be deposited with the payment of 10 per centum of the $5 per share, and that, if the stockholders would go in and deliver their stock to the defendant, that he would take and deposit the same, and make the 10 per cent. payment, and thereby the stockholders would be enabled to control in the reorganization of the road, and they could afterwards take the stock back. In pursuance of this arrangement, the plaintiff procured and delivered certificates of his shares of stock to the defendant. There was some proof given tending to show that a paper was drawn at this time showing the arrangement under which the stock was delivered, but it was never signed, and the rights of the parties are to be determined upon the circumstances and what transpired at the time the stock was agreed to be delivered and the subsequent acts of the parties. It is quite evident from these circumstances that the plaintiff, when he delivered his stock, did not intend to make a gift of the same to the defendant. The latter does not pretend, except in his answer, that he paid anything for the stock, or parted with anything of value as a consideration for its delivery. He testifies that the holders of the stock were anxious to retain local control, as they were apprehensive that, if the control went to New York, the bondholders' interests would be sacrificed. It does not appear, however, that the plaintiff was interested in the bonds except by the general statement of the defendant that all were interested therein, while it does appear, and from it the jury were authorized to find, that the defendant took the stock under an agreement that he would pay the assessments, and that the plaintiff could take it back afterwards.

The effect of this arrangement did not deprive the plaintiff of all interest in his stock. It simply constituted the defendant his agent or trustee to take title thereto for delivery to the trust company. So far as he made the contemplated advance, he acquired a right therein which he doubtless became entitled to enforce, and the plaintiff could not repossess himself of the stock until he had made such payment, nor could he, by the exercise of any right possessed by him, defeat the use of the stock for purposes of reorganization. Beyond this, however, the defendant obtained no right to the stock or its proceeds as against the plaintiff. It appeared that after the stock was deposited a sale of the railroad was made to Cleveland parties, from which sale the defendant received for the stock which he held, including the plaintiff's, after deducting all payments made by him thereunder for assessments, the sum of $71,840. The only payment which the defendant made upon the stock was the 10 per cent. It is true that he gave a check for the additional sum of $4.50 per share, but this check was never delivered to the trust company, and was never, in fact, paid in cash. After the sale was perfected, and the defendant had received the money, the plaintiff made a demand upon the defendant for a certificate of the new company represented by his stock, and at the same time tendered the amount of the assessment and interest thereon. The defendant refused to deliver the same, claiming that it was not enough, but should be $8,250, and said if that sum were tendered he would then tell him the amount to which he was entitled. It is quite evident from this transaction that the defendant assumed that the plaintiff was not entitled to receive anything for his stock, and that he had determined to retain as his own the whole of the proceeds represented by it. There existed no right in the defendant to retain more than the sum represented by the assessment which he had paid and the interest thereon. If he possessed a greater right, it is not made to appear upon this record. At the close of the plaintiff's case, the defendant moved to dismiss the complaint upon the ground that the cause of action was unproved in its entire scope and meaning. After a colloquy between the counsel and the court, the count for fraud and conversion contained in the complaint was stricken out, and the court denied the motion to dismiss. The defendant took no exception to the ruling, and at once entered upon his defense. We are unable to see why this count of the complaint was stricken out, as we think that it was quite an appropriate averment, and consistent with the evidence as given. Indeed, we think it properly characterized the transaction. The defendant had received stock belonging to the plaintiff, for which he paid nothing, under an agreement to return the same or its equivalent in certificates of the reorganized company, and, failing in this, the law implied an agreement to return the proceeds of the sale of the stock in cash. Upon receiving the proceeds of a sale of the property represented by the stock, he pockets the proceeds, and refuses return of anything. If this does not constitute a conversion, and is not a fraud upon the person entitled to the property or money, then we have always failed to correctly understand these

terms. The defendant occupied the relation of a trustee to the plaintiff, and became bound to account for the property or its proceeds, and when he refused so to account, and pocketed the proceeds, he became guilty of a conversion, and his act was in fraud of the rights of the plaintiff. At the close of the proof the defendant renewed his motion to dismiss upon various grounds, none of which we think is tenable.

The court submitted the case to the jury in a charge to which no exception was taken and no fault found. It is not printed in the record, and it must therefore be presumed to have fully protected the rights of the parties. No error is made to appear in the record, and the verdict of the jury is abundantly sustained by the testimony. The judgment and order should therefore be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.