## CAHAN v. EMPIRE TRUST CO.

(Circuit Court of Appeals, Second Circuit. January 4, 1926.)

No. 105.

**1. Banks and banking ⊜131—Bank responsible for results, if having notice that would lead reasonable man to suspect wrong.**

If bank of deposit, in permitting depositor to unlawfully apply funds of another, has notice which would lead a reasonable man to suspect wrong, and it fails either to verify or dispel that suspicion, it is responsible for results.

**2. Principal and agent ⊜148(2)—Bank held placed on notice of agent's authority in drawing checks on principal's account and transferring it to his own credit in defendant's bank.**

Where plaintiff gave his son power of attorney to draw checks on plaintiff's account, and defendant bank collected and credited to son and permitted him to use proceeds of checks, showing on their face, that son as a fiduciary had drawn plaintiff's money for his own use in defendant's bank, *held*, that bank was put on notice of son's authority, notwithstanding certification of such checks on plaintiff's account, and its act in collecting such checks for personal account of the son, constituted as matter of law an assistance to him in unlawful appropriation of plaintiff's funds.

**6. Courts ⊜365 — New York decisions followed in granting interest on causes arising within such state.**

In deciding causes arising within state of New York, United States Circuit Court of Appeals will grant interest in accordance with rules deducible from New York decisions.

**4. Interest ⊜19(2)—Interest allowed in conversion from dates when proceeds of checks were respectively credited by bank to plaintiff's son.**

In action in form for conversion of proceeds of checks drawn by plaintiff's son on plaintiff's account, on theory that defendant, by crediting proceeds to son's account for his personal use, aided in such conversion, and plaintiff's damages being a matter of computation from undisputed facts, interest will be allowed from dates when proceeds of checks were respectively credited by bank to son.

In Error to the District Court of the United States for the Southern District of New York.

Action by Charles Haslitt Cahan against the Empire Trust Company. Judgment for plaintiff, and both parties bring error. Defendant's writ dismissed, and on plaintiff's writ judgment remitted, with directions to modify.

Cross-writs of error to judgment directed for plaintiff in the District Court for the Southern District of New York.

For his own convenience entirely, plaintiff gave to his son, a man of mature years, powers of attorney to make, sign, indorse, deposit, draw, and deliver checks and other orders for the payment of money on two New York City banks in which he had deposit accounts. The son, before any such power of attorney given, had a bank account of his own in the same city and with defendant, Empire Trust Company.

About two months after power of attorney given him, the son began to draw the series of 21 checks which are the basis of this

action. Each[1] of these 21 checks was signed, "C. H. Cahan, by C. H. Cahan, Jr., His Attorney."

Most of the checks were drawn to the order of himself, but some to that of Empire Trust Company; all were deposited by Cahan, Jr., in that company to the credit of his personal account, and all bear, and bore when presented to the drawee banks, indorsements showing that defendant had received them from C. H. Cahan, Jr. All but two checks had been certified or accepted by the drawee bank when and as drawn; i. e., before deposit by Cahan, Jr.

Plaintiff, Cahan, Sr., more than a year after the last of the 21 checks had been drawn, deposited, and paid, ascertained that by means thereof $31,170 had been transferred from his two aforesaid personal accounts to Cahan, Jr.'s, personal account in defendant bank, and been expended for unknown purposes, but for no purpose beneficial to or known to plaintiff, and certainly not to pay any indebtedness of Cahan, Jr., to defendant, as Empire Trust never loaned any money to that depositor.

This action at law was brought after demand and refusal, and the complaint stated plaintiff's position thus:

Cahan, Jr., had no "power or authority" to draw checks for the purpose of appropriating to himself and his personal uses the funds of plaintiff. The 21 checks specified were drawn by Cahan, Jr., "in breach of his trust as attorney" for plaintiff. Defendant at the request of Cahan, Jr., had "without the authority or knowledge of plaintiff wrongfully placed the said 21 checks" to the credit of the "personal and private account" of Cahan, Jr., and "permitted" him to appropriate the proceeds of the same, although, when said checks were so deposited, "the defendant had full notice of said wrongful and fraudulent acts of" Cahan, Jr., and "knew" that its depositor, in using proceeds of such checks in his private account with defendant, "was thereby wrongfully and fraudulently and in breach of his said trust misappropriating and converting plaintiff's property to his own use"; wherefore, in doing and permitting to be done what we have above set forth, defendant "knowingly participated" in Cahan, Jr.'s, "wrongful and

fraudulent misappropriation and conversion" of plaintiff's property.

Defendant went to trial on the general issue, and, the facts appearing as above, both sides moved for a directed verdict. The court below gave direction for plaintiff, and for the total of the checks, $31,170, but refused interest, except from date of verdict. Whereupon plaintiff brought a writ, assigning for error failure to grant interest from the respective dates of collection of the 21 checks, and defendant took out a writ, because verdict had not been directed in its favor.

Hughes, Rounds, Schurman & Dwight, of New York City (Charles E. Hughes, Jr., Augustus L. Richards, and Bertram F. Willcox, all of New York City, of counsel), for plaintiff.

Parmly, Stetson & Woodward, of New York City (Van Vechten Veeder and Wm. L. Woodward, both of New York City, of counsel), for defendant.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). We have not summarized all the evidence given, but have stated the only facts we deem material; they are also clearly proven.

This material evidence proves that defendant received without comment or question, collected, and credited to Cahan, Jr., and permitted him to use, the proceeds of 21 checks on their face showing that the depositor as a fiduciary—i. e., an attorney in fact—had drawn his principal's money for the purpose of transferring it to his own credit and for his own use in defendant's bank.

This evidence must of course be measured by and with the pleadings. The complaint alleges that what Cahan, Jr., did was a "conversion"—i. e., a wrongful misappropriation —of his principal's money, and further that what defendant did aided the attorney's fraud and amounted to participation therein. The asserted legal analogy is that both the actual doer of wrong and his accessory therein are both liable, and it is not necessary that both should profit by the wrong. Longfellow v. Lewis, 2 Hask. 256, Fed. Cas. No. 8,487.

Admittedly defendant knew nothing of what its depositor, Cahan, Jr., was doing, except as information was given by the checks he offered for deposit; wherefore the record presents this bald legal question: Is an agent's bank of deposit put on notice by, and

[1] There is no direct evidence of the way in which the last of the series, dated October 15, 1918, was signed or indorsed, nor is the check produced; but that such check existed and was used like the others is not questioned by defendant's assignments of error, so we pass the matter.

does it take at its peril, if it receives without investigation, a check drawn by the agent on his principal's funds to his own order and tendered for the credit of his private account?

This question has been thoroughly apprehended by counsel, yet in treating it we cannot but think that they have juggled somewhat with the word "authority," as modified by the adjectives "actual" and "apparent." Definition is always dangerous, for by derivation it pretends to speak the last word, to be final, which is usually impossible. For the purposes of this case, however, "actual" authority may safely be taken to mean what sundry Civil Codes (notably that of California) say it means, viz. the power which "a principal intentionally confers upon the agent, or intentionally or by want of ordinary care allows the agent to believe himself to possess."

As thus described, Cahan, Jr., could never have believed that he had "actual" authority to use his father's money for his own purposes, while his apparent authority is not expanded by any evidence before us. He was apparently, no more than he was actually, one who by written power was authorized to deal with the deposits in the drawee banks for his principal's uses and purposes. But he had both actual and apparent authority to draw the 21 checks, and the misappropriation of which he was undoubtedly guilty lay, not in the drawing of the checks, but in what he did with them.

In considering the mass of case law discussed, we shall, so far as possible, avoid decisions dealing with defalcations by executors and trustees who had "title" to the funds they misapplied; we shall regard primarily cases arising out of acts by agents like Cahan, Jr., or officers of corporations, both of whom act by procuration and have no title to the funds with which they deal. We do not assert that the legal principles involved in these two classes of wrongdoing are basically different; we but seek to avoid unnecessary prolixity.

We likewise lay aside the class of cases of which Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585, is an example, wherein a defendant received from an agent a check of or belonging to his principal in payment of the agent's indebtedness to the defendant. Again we do not deny that the principles involved in such cases are in some ways analogous to the case in hand, but the facts at bar do not render such decisions especially apt, and the field of citation must be kept as small as possible.

Remembering, now, that the trial court *directed* a verdict, our question may be thus restated: Did the act of defendant, in collecting for the personal account of its depositor checks drawn by that depositor as agent of another against his principal's funds, constitute *as matter of law* an assistance to the depositor in an unlawful appropriation of that principal's funds? The holding below substantially asserts that the evidence was such that the law could only be satisfied by a direction, and that the misappropriation was complete when the money was collected and deposited to Cahan, Jr.'s, credit.

Technical or formal criticism can be made of these holdings. It may be urged that, since admittedly there was nothing per se wrong in drawing checks to Cahan, Jr.'s, order, it is illogical to find a *tort* in carrying out the order contained in the lawfully drawn check; and it is also a rather attractive criticism to say that, if an agent has his principal's money either in his pocket or in his own bank account, and applies it in cash or by his own check to his principal's business, there is no wrong, and therefore no actionable tort; for there is no such thing as a contingent wrong. The formal answer may be that *injuria* is complete when the agent puts his principal's money where his principal did not intend it to be, or wish his agent to put it, but *damnum* did not arise until actual wrongful expenditure.

Forms and formality are important. The difficulties of modern courts are largely due to modern ignorance of form; but form cannot be made as important as substantive law, and the underlying question here is whether there is or is not the judge-made business safeguard against dishonesty asserted by this court in Havana, etc., v. Central, etc., 204 F. 546, 548, 123 C. C. A. 72, 74 (L. R. A. 1915B, 715), to be substantially as follows: If an agent's bank receives for deposit to the personal credit of the agent checks drawn by the agent to his own order on the principal's funds, that bank is by the checks themselves charged with notice that the agent is wrongfully applying the principal's money to his own use, and if said bank fails to make inquiry it is liable to the principal for an ensuing fraudulent appropriation to his own use by the agent.

We took this rule in substance from Havana, etc., v. Knickerbocker, 135 App. Div. 313, 119 N. Y. S. 1035, and approved it, although the judgment of the Appellate Division had already been reversed in 198 N. Y. 422, 92 N. E. 12, L. R. A. 1915B, 720. Since

we perceive no legal difference between the position of the fiscal officer of a corporation who draws against corporate funds checks to his own order, and puts them to the credit of his private account, and that of Cahan, Jr., in this case, we shall assume that the Havana litigation in the state court was exactly like the present cause, and the Havana Case in this court was in legal substance an action by Cahan, Sr., against his own (the drawee) banks.

When, in 1909, the Appellate Division decided the Havana Case, the dissenters, per Scott, J., said that the judgment seemed to them "to extend the responsibility of persons dealing with trustees, not only beyond anything that has yet been judicially decided, but also beyond practicable limits." Whether there was such complete paucity of decision will be considered later. The real question to be decided, for it underlies the rule, is whether such rule does or does not unduly hamper the business of bankers and the commercial interchange of goods. The matter in final analysis is a matter of business convenience, rather than of morals.

The problem was certainly not solved in the New York court of last resort in 198 N. Y. 422, 92 N. E. 12, L. R. A. 1915B, 720; for the judgment of the Appellate Division was reversed, not on the ground that there was no such rule as had been laid down below, but because, conceding the rule arguendo, the duty of inquiry was fulfilled by presenting the agent's checks on his principal's funds to the bank containing them; and if that bank, being the agent of its depositor for that purpose, paid the check, it thereby affirmed that the check was properly drawn and should be paid according to its tenor and indorsements. Then the court intimated (perhaps somewhat faintly) that, if the drawee bank made a mistake in its representations as agent as aforesaid, it would be responsible therefor.

In Whiting v. Hudson, etc., Co., 234 N. Y. 394, 138 N. E. 33, 25 A. L. R. 1470, the question was again presented, but avoided, by attributing to the certification of checks an effect of which we are unable, after much deliberation, to approve. In commenting on the decision in the Havana Case, the court admitted that "there may be technical inaccuracy in describing the drawee bank as the depositor's agent for the purpose of making representations as to the fiduciary's powers. * * *. The relation is one, not of agency, but of debtor and creditor," which is exactly the position taken concerning that decision by this court when the wronged principal in the Havana Case, acting perhaps too hastily on the hint of the Court of Appeals, sued in the United States court his own bank, alleging (as per suggestion) that it made a mistake in substantially saying that the checks were "all right," by paying them.

We regard the certification of the checks on Cahan, Sr.'s, accounts as not controlling, and are unable to agree with the reasoning of the Whiting Case for the following reason: Let it be admitted as true (page 404 [138 N. E. 36]) that the legal result of certification is the same as if Cahan, Jr., had received the cash over the counter, and between the drawee bank and its depositor (the present plaintiff) the checks had been paid; it remains true that this action, or any similar one, would have lain just as well if Cahan, Jr., had actually drawn the cash and deposited the same with defendant, but had then cotemporaneously informed defendant that he had drawn the money from his father's account by virtue of his letter of attorney, and now wished it to go to his personal credit and be available for his personal use.

This action depends for success, not on what the drawee banks *did*, but on what the unfaithful agent's bank (the present defendant) *knew*. It makes no difference whether the knowledge came from the face, form, and contents of the checks tendered for deposit, or from any other authoritative and convincing source.

The net result of the Havana Cases in terms of the present litigation is that the New York court held that Cahan, Sr., should not prevail against Empire Trust Company if his own banks approved the 21 checks by paying them, and this court held that Cahan, Sr., could not recover against his own banks, because the New York decision was erroneous, and said banks did nothing of the kind; they merely paid drafts which the drawer had a right to make, and were not concerned with what the drawer did with the proceeds.

We could not have come to the conclusion announced in 204 F. without holding the decision in 198 N. Y. erroneous; therefore the decision cannot be called obiter, as is asserted by defendant. But, even if thought obiter, it is an obiter of the same kind as the famous one in Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60, and plainly a mature expression of opinion by the full bench of this court, which we can hardly condemn as a dictum. Cameron v. United States, 250 F. 943, 163 C. C. A. 193. We must either follow or overrule it.

It is not quite true, as said by the dissent in 113 App. Div. 320, 119 N. Y. S. 1041, that no similar rule had ever been judicially enforced. In Anderson v. Kissam (C. C.) 35 F. 699, Wallace, J., in 1888, following, as he asserted, earlier decisions in the state courts, held that it was sufficient evidence of conversion that an agent's bankers had credited to the private account of that agent checks which on their face were the property of his principal, which is substantially the rule contended for here; and what was in effect the same ruling was applied in the Ninth Circuit, in Farmers', etc., Co. v. Fidelity Co., 86 F. 541, 30 C. C. A. 247. While more recently the Eighth Circuit, in Oklahoma Bank v. Galion, etc., Co., 4 F.(2d) 337, declared it as well settled that "when a bank, with knowledge that its funds belonged to the principal and not the agent, which was apparent from the face of the [checks] permits him to [withdraw the money], it is liable to the principal for the moneys thus deposited and withdrawn by the agent on his individual check and by him converted to his own use," unless facts appear justifying the payment, which did not appear in the case cited, and do not in the case at bar.

Further, in Duckett v. National, etc., Bank, 86 Md. 400, 410, 38 A. 983, 986, 39 L. R. A. 84, 63 Am. St. Rep. 513, an agent deposited to his own account a check which on its face belonged to a trust of which the depositor was the trustee, and the court said: "Knowing that the money was not [the depositor's], but that it was payable to him and to be deposited to his credit as trustee, the bank had no authority to place it to his individual credit." It may be noted that in this case legal title was in the payee as trustee, but despite this the general ruling above quoted was announced.

More recently in Bank of Hickory v. McPherson, 102 Miss. 852, 59 So. 934, where an official who had no title received a check which on its face showed that it belonged to him in his representative capacity, and not individually, and the bank credited the proceeds thereof to him individually, the bank was held liable for what the court rightly called "an unlawful application"; i. e., the payment of his private debts. Again, in United States, etc., Co. v. People's Bank, 127 Tenn. 720, 157 S. W. 414, a guardian did the same thing, and the bank which permitted him to do so was held liable, because it had notice of its depositor's position, conveyed by the check itself.

[1] It is true that the foregoing cases, as well as the English ones to be cited, nowhere state the rule in the compendious and far-reaching form in which it was put by Noyes, J., in 204 F. But they all show (as indeed do the New York cases) that the question is one of degree. It is never doubted that, if a bank of deposit has notice which would lead that fiction of the law, a "reasonable man," to suspect wrong, the bank which fails either to verify or dispel that suspicion is responsible for the results.

Consequently the question in this case, as in the Havana Cases, is always, not whether there was notice of something, but whether there was *sufficient* notice in and by the face, form, and contents of the check tendered for deposit. In the English cases (Ex parte Darlington, etc., 4 De G. J. & S. 581; John v. Dodwell, [1918] A. C. 563; Ross v. London, etc., Bank, [1919] 1 K. B., 678) it is not asserted that the piece of negotiable paper tendered for deposit and collection was in and of itself, and by its form, sufficient notice to incite the receiving bank to action and investigation at its own peril, although in the Ross Case at least there was no notice given, or indeed possible, other than the form of the checks deposited, which were, however, of an unusual character; i. e., they were obviously drawn for purposes probably foreign to any use that the depositor could lawfully make of funds derived from them.

But in the most recent English case, Underwood, Ltd., v. Bank of Liverpool, [1924] 1 K. B., 775, a corporate officer tendered for deposit in his personal account checks which were on their face property of the corporation, indorsed by him officially for the credit of his personal account. Without investigation, the bank received these checks, gave the official personal credit for them, and permitted him to dissipate the account. We perceive no difference in legal effect between that case and the one at bar. Scrutton, L. J., disposed of what is the vital question underlying the rule asserted by the plaintiff here and by this court in the Havana Case, by saying: "If banks, for fear of offending their customers, will not make inquiries into unusual circumstances, they must take, with the benefit of not annoying their customers, the risk of liability because they do not inquire." This is substantially the same brushing aside of the objection to the practicability of the rule that Wallace, J., used nearly 40 years earlier.

Still adhering to an examination of cases in which the wrongdoing depositor had no title to that which he misused, there is un-

doubtedly authority contra, and decisions have not always been apparently consistent. The result reached in Santa Marina Co. v. Canadian Bank, 254 F. 391, 165 C. C. A. 611 (Ninth Circuit), holds that, where a corporate officer had authority to indorse checks belonging to the corporation in blank, and he did so indorse and deposit them to his private account, the checks so indorsed became the property of his bank on being deposited, and in the form of the check the court found absence of timely notice that the depositor had no title to the checks so deposited. This does not seem to us consistent with the earlier decision of the same court above cited.

Goodwin v. American National Bank, 48 Conn. 550, presented questions suggested by this case in several forms, for the wrongdoing depositor was known to the defendant bank through his private account, through an account as town treasurer, and as the executor of an estate. The bank permitted him to deposit items which on their face belonged to the town, of which he was treasurer, and the estate, of which he was executor, in his private account, and in every instance, when his defalcations appeared, the bank was exonerated. The town moneys and the estate moneys were treated alike, and the ratio decidendi is forcibly set forth by Pardee, J., at page 568:

"It might be a wholesome rule, if established and understood, that any omission by a trustee of the mark of the trust from either the securities or the money belonging to it, even with an honest purpose and for the briefest time, should be notice to all persons having knowledge of such act that a fraud had been accomplished, if thereby the fidelity of trustees could be secured; but, when a trustee has broken down all other barriers between himself and fraud, we fear that he will not allow a rule of law to restrain him. Those for whom he acts must ever find their *protection in his integrity.*"

We are of opinion that not universally, but in numerous jurisdictions, and especially in the courts of the United States and those of England, a rule which Pardee, J., thought *might* be well has been announced and enforced.

In the case of agents acting by procuration, if there be no such rule, if, for instance, an attorney in fact can, as such attorney, not only withdraw his principal's funds from one bank, as he plainly has a right to do, but deposit them in another (or even perhaps in the same bank) to his own credit, without any responsibility on the part of the bank accepting such deposit, a principal who gives a power of attorney, a private corporation which gives usual powers to its financial officer, a municipality, which can only act through its elected or appointed officers, is left without any remedy, except that which the Connecticut court thinks is all that the law gives; i. e., the integrity of its fiduciary.

At bottom, the question here depends upon whether the form of such drafts as those at bar gives clear enough notice that the agent is not acting in the principal's interest. There are, indeed, cases in which it might be in the principal's interest for the agent to withdraw funds from the principal's account and deposit them in his own account, even in a bank of the same city, or in the same bank. The only case we can think of is one in which the agent wanted to conceal his principal's name in a transaction in which even a cashier's check might excite suspicion. But the payment of the agent's own debt might in fact be a part of such a transaction, and that possibility does not seem to us sufficient justification. We must balance probabilities, and conclude that we hold the form of the check should be taken as evidence that the agent is engaged upon ventures of his own, and as to his authority to conduct the same the bank must assume the risk of investigation.

This court once decided to adopt and enforce the rule announced in the Havana Case. It is a hard rule, as business is ordinarily conducted, not only in the financial institutions of a populous and busy city, but perhaps even more so in smaller communities, where men are more widely known by reputation, and are more influenced by personal reputations then can be expected in the crowds of a cosmopolis. We feel acutely the disadvantage of continuing to differ with the highest court of New York; yet the treatment in that state of the Havana Case in 198 N. Y. may be noted. It has been cited twice, first in Bischoff v. Yorkville Bank, 218 N. Y. 106, 113, 112 N. E. 759, 761 (L. R. A. 1916F, 1059), a case involving the wrongdoing of an executor, and cited to show that, "although the depositor is drawing checks which the bank may surmise or suspect are for his personal benefit, it is bound to presume, in the absence of adequate notice to the contrary, that they are properly and lawfully drawn. Adequate notice may come from circumstances which reasonably support the sole inference that a misappropriation is intended, as well as directed."

The inference is that the Havana Case

held that the mere presentation of a check that might possibly be misused was not by reason of the possibility "adequate notice." The statement of law may be admitted, but that was not the point of decision by the Court of Appeals in 198 N. Y.

It was again cited in Whiting v. Hudson Trust Co., supra, where the inaccuracy of the reasoning of Bartlett, J., in 198 N. Y., was substantially admitted, but a rediscussion of the matter was avoided by attributing to certification of checks a result with which, as above shown, we are unable to agree. The question is always one of notice, and we cannot agree that notice may not be given as well by a certified check as by one uncertified. It may be given, as we have shown above, by word of mouth. Certification is among other things a guaranty that the check is drawn by proper authority against sufficient funds; it is not a guaranty of the identity or authority of the payee. How it can be treated as enabling the recipient thereof to shut his eyes to everything else written on the check form we are quite unable to perceive.

It seems to us that the exact doctrine of the Havana Case (in 198 N. Y.), its essential holding, and the reason for the result reached, has, while not rejected in form, been substantially disaffirmed by the very court that pronounced it. The treatment of the decision by the lower courts of 198 N. Y. is perhaps unimportant, but interesting. It was practically disregarded in Eyre v. Coal, etc., Bank, 208 App. Div. 686, 693, 204 N. Y. S. 21, and perusal of other cases in the same court subsequent to the date of 198 N. Y. will confirm the impression that New York has been far from enforcing the doctrine laid down in the decision we still cannot follow.

[2] Our examination of authority, assisted and guided by very able briefs, has led to the conclusion that upon authority there is no reason to depart from the body of law formulated by Noyes, J., in 204 F. The reason for the rule is one of public policy; and,

as usual, arguments for both sides may be and have been persuasively presented. Business convenience and expedition, a liking for that which is "practicable," rather than that which is burdensomely altruistic, lead to the result somewhat piously set forth by Pardee, J., supra; while a desire to yield that measure of assistance which the law increasingly attempts to give to the victims of misplaced confidence, lead to such statements of public policy as have been made by Scrutton, L. J., and Wallace, J. Upon the whole, we still incline to the latter view, and adhere to that view of law and public policy set forth in our previous decision, under which direction of verdict for plaintiff was clearly right.

[3] There remains the question of interest upon the verdict. On this point we adhere strongly to the announcements made by us in Stephens v. Phœnix, etc., Co., 139 F. 248, 71 C. C. A. 374, and Demotte v. Whybrow, 263 F. 366, to the effect that, in deciding causes arising within the state of New York, we grant interest in accordance with the rules deducible from the decisions of New York.

[4] This is in form an action for conversion, and where the amount of damages is, as here, a mere matter of computation from facts undisputed, the New York rule is not doubted; interest is a matter of right. Einstein v. Dunn, 61 App. Div. 195, 70 N. Y. S. 520, affirmed 171 N. Y. 648, 63 N. E. 1116. It follows that the court below erred in not granting interest on the several items represented by the 21 checks from the dates when they were respectively credited by defendant to Cahan, Jr. This error may be corrected by remitting the case under plaintiff's writ of error to the court below, with directions to amend the verdict in accordance with this opinion. Speelman v. Iowa, etc., Ass'n (C. C. A.) 4 F.(2d) 501, at 504.

It is ordered that the defendant's writ of error be dismissed, and that upon plaintiff's writ the judgment be remitted to the court below, for modification as required by this opinion. Plaintiff will recover one bill of costs in this court.