**STEINGUT et al. v. GUARANTY TRUST CO. OF NEW YORK et al.**

**UNITED STATES v. SAME (two cases).**

**Nos. 177–179, Docket 20262–20264.**

Circuit Court of Appeals, Second Circuit.

May 7, 1947.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

Natanson, Pack & Scholer of New York City, for Receivers, plaintiffs-appellants-appellees.

Cravath, Swaine & Moore, of New York City (Albert R. Connelly, Samson Selig, Samuel L. Scholer and L. D. Simpson, all of New York City, of counsel), for intervenor-appellee, Millard.

Borris M. Komar, of New York City (David L. Sprung, of New York City, of counsel), for intervenor-appellant, Tillman.

Davis Polk Wardwell Sunderland & Kiendl, of New York City (John W. Davis, Ralph M. Carson, William C. Cannon, Francis W. Phillips, Edward J. McGratty, Jr. and William R. Meagher, all of New York City, of counsel), for Guaranty Trust Co. as appellant-appellee in the U. S. action and appellee-appellant in the receivers' action.

John F. X. McGohey and Daniel M. Sandomire, both of New York City (John F. Sonnett and Paul A. Sweeney, both of Washington, D.C., and Alexander N. Sack, Howard N. Meyer, Louis W. Bookheim, Jr., Lester S. Jayson and Joseph K. Reichbart, all of New York City, of counsel), for the United States.

FRANK, Circuit Judge.

The facts are amply stated in the very able opinion of Judge Rifkind, D.C., 58 F. Supp. 623. We agree with that opinion.

We do not, however, entirely agree with the trial judge with respect to the interest. See D.C., 60 F.Supp. 103. He held that interest on the deposits should be computed at the contracted rates up to June 16, 1933, the effective date of the Banking Act of 1933, § 11(b), 12 U.S.C.A. § 371a, prohibiting the payment of interest on demand deposits by member banks of the Federal Reserve System; and that interest, after the date when the actions were commenced, should be computed at 4%. We accept these conclusions, except as to the 4% rate.

The judge reasoned thus: (1) Had the suits been brought by the depositor, the Russo-Asiatic Bank, or by the Russian Government, the rate, after breach, would have been at 6%, this being the rate prescribed by the New York statutes as to contracts made and to be performed in New York. (2) But, because the claims had been transferred to the United States, Royal Indemnity Co. v. United States, 313 U.S. 289, 296, 61 S.Ct. 995, 997, 85 L.Ed. 1361, applied, and required the determination of the interest as damages for delay, regardless of the local statute.

We think the Royal Indemnity case inapposite. There a federal collector of internal revenue had accepted a surety bond filed with him by a taxpayer to accompany a claim for abatement of income tax. The Commissioner of Internal Revenue in part rejected the abatement claim and demanded the unpaid amount of the tax, together with interest. The taxpayer did not pay the interest. In a suit against the surety for the interest, the Court held that "the rule governing the interest to be recovered as damages for delayed payment of a contractual obligation to the United States is not controlled by state statute or local common law. In the absence of an applicable federal statute it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for nonpayment of the amount found to be due." The Court cited Board of County Commissioners v. United States, 308 U.S. 343, 350, 352, 60 S.Ct. 285, 84 L.Ed. 313. There the United States brought suit, on behalf of an Indian, for recovery of taxes paid to a county. The law of the state precluded recovery of interest on taxes illegally collected. The Court (308 U.S. 350, 60 S.Ct. 288) said, "In ordinary suits where the Government seeks, as between itself and a private litigant, to enforce a *money claim ultimately derived from a federal law,*[1] * * * this Court has chosen that rule as to interest which comports best with general notions of equity." As to interest on the claim in question, the Court held that the state law was inapplicable, stating that, in such cases, "the state law has been absorbed, as it were, as the governing federal rule not because state law was the source of the right but because recognition of

---

[1] Emphasis added.

state interests was not deemed inconsistent with federal policy." We think, therefore, that the Royal Indemnity doctrine must be limited to suits to enforce money claims "ultimately derived from a federal law." This interpretation is borne out in subsequent cases in which the Royal Indemnity case has been cited. Thus it was cited in Prudence Corporation v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293, to support the proposition that in "the interpretation and application of federal statutes, federal not local law applies." So, too, it was cited in Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 575, 87 L.Ed. 838, which related to "the rights and duties of the United States on commercial paper which it issues."[2]

In the instant case, the claims did not "ultimately derive from a federal law" or from a contract made between the bank and the United States. Here the United States is, in effect, an assignee of the Russian government which, in turn, acquired the claims from the defendant's depositor. The rights thus derive from contracts made between that depositor and the defendant. Accord-

ingly, we hold that the state statute governs and that the proper rate of interest from the date of the breach was 6%.

The United States argues that the breach occurred at least as early as 1918, when the defendant, by entries on its books, purported to assert that it no longer owed anything on account of the deposits. We cannot agree. As the deposits were debts payable on demand, nothing was due and payable until a demand. We agree with the trial judge that the demand of the refugee directors of the Russo-Asiatic Bank was not effective.[3] Accordingly, no effective demand was made until the United States instituted the present actions.[4]

It has been held in New York that a trustee or other fiduciary may be liable for conversion of money, even if it is not earmarked.[5] This seems to us to be the explanation of cases cited by the United States,[6] for, in each of those cases, the bank appears to have knowingly participated in or aided such a conversion,[7] and in New York the rule is that interest is allowed as a matter of right in cases of conversion.[8] We find no New York de-

[2] Cf. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, citing Board of Commissioners v. United States.

[3] He said (60 F.Supp. at pages 105, 106): "The plaintiff advances two earlier alternative dates: (1) the date of the defendant's refusal to pay on demand of the refugee directors; (2) the date of the acquisition of the claims by the United States through the Litvinov Assignment. Neither of these positions is, in my judgment, valid. The demand of the refugee directors does not rise to the dignity of a transaction 'valid when entered into,' Guaranty Trust Co. v. United States, 1938, 304 U.S. 126, 140, [58 S.Ct. 785, 82 L.Ed. 1224] so as to be given effect after recognition of Soviet Russia, for the purpose of starting an interest liability in favor of the United States, especially when the claim of the United States is incompatible with the claim asserted by the refugee directors. Nor can the refusal to pay on demand of the refugee directors justify the contention of the United States that, when it acquired the claims, a demand was futile, Tillman v. Guaranty Trust Co. of New York, 1930, 253 N.Y. 295, 171 N.E. 61. Recognition of Russia and the execution and delivery of the Litvinov Assignment

were major events full of significance. From the fact that the directors' demand was refused prior to them the inference may not be drawn that it would again be refused if made by the United States after their occurrence."

[4] Even assuming, arguendo, that there can be an anticipatory breach of an obligation to pay money, the doctrine of anticipatory breach could not be operative here, because no notice of intention not to pay was communicated by the defendant to the Russian government.

[5] Wrynn v. Pistor, 141 App.Div. 104, 125 N.Y.S. 970; George Haiss Mfg. Co. v. Becker, 198 App.Div. 123, 189 N.Y.S. 791; Muller v. Naumann, 85 App.Div. 337, 83 N.Y.S. 488; cf. Gordon v. Hostetter, 37 N.Y. 99; People ex rel. Zotti v. Flynn, 135 App.Div. 276, 120 N.Y.S. 511; Miller v. Miles, 58 App.Div. 103, 68 N.Y.S. 565.

[6] Holden v. N. Y. & Erie Bank, 72 N.Y. 286; Reynolds El. Co. v. Merchants Nat. Bank, 55 App.Div. 1, 67 N.Y.S. 397; cf. Cahan v. Empire Trust Co., 2 Cir., 9 F. 2d 713, 719, reversed on other grounds, 274 U.S. 473, 47 S.Ct. 661, 71 L.Ed. 1158, 57 A.L.R. 921.

[7] Cf. Muller v. Naumann, 85 App.Div. 337, 83 N.Y.S. 488.

[8] Cahan v. Empire Trust Co., 2 Cir., 9

cisions to the effect that, absent any fiduciary relation or participation in a fiduciary's breach of his obligation, a bank is guilty of conversion merely because it makes entries on its books showing a cancellation of all or any part of its obligations to a general depositor, when the fact of such conduct has not been communicated to the depositor.[9]

Modified on appeals of the United States in the actions brought by it; affirmed on all the other appeals.

F.2d 713, 719; Einstein v. Dunn, 61 App.Div. 195, 70 N.Y.S. 520, affirmed 171 N.Y. 648, 63 N.E. 1116; George Haiss Mfg. Co. v. Becker, 198 App.Div. 123, 189 N.Y.S. 791.

[9] Cf. Southwick v. First Nat. Bank, 84 N.Y. 420, 431.